**UNITED STATES of America**
v.
**John R. BRANIC, Appellant.**

**UNITED STATES of America**
v.
**Donald T. STEVENS, Appellant.**

**UNITED STATES of America**
v.
**Tyrone BASKERVILLE, Appellant.**

**Nos. 72–1831, 72–1832 and 72–2219.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 1973.

Decided April 9, 1974.

---

Eugene I. Lambert, Washington, D. C. (appointed by this Court), with whom Robert L. Palmer, Washington, D.C., was on the brief, for appellants.

Stuart M. Gerson, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Stephen W. Grafman, Asst. U. S. Attys., were on the brief for appellee. Roger M. Adelman, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and ROBB and WILKEY, Circuit Judges.

PER CURIAM:

■ In a joint trial, appellants were convicted by a jury of felony murder, armed robbery, and assault with a deadly weapon. They were all denied Youth Corrections Act [1] sentences, and received twenty years to life on the murder counts, and lesser, concurrent, sentences for the other convictions.[2] We affirm the felony murder and armed robbery convictions, and vacate the assault with a deadly weapon convictions.[3] We also reverse Stevens' sentence, and hold in abeyance the contentions of Branic and Baskerville with respect to the trial court's refusal to impose youth sentences.

I

The evidence showed that appellants entered a jewelry store, and while Baskerville stood guard, Branic and Stevens forced both proprietors—one of whom was the seventy-five year old father of the other—into a back room. Both men were handcuffed and instructed to lie on the floor. The younger man asked if his father could sit on a chair because of his age, but was told to "shut up." Adhesive tape was then wrapped around the victims' months. The son was still able to speak, and tried, in Hungarian, to calm his father. In response, one of the robbers removed the tape from the son's mouth, stuffed the son's handkerchief in his mouth, and replaced the tape. Appellants then took approximately $4000 in merchandise and cash.

Shortly after the robbers fled, the younger proprietor ran to a neighboring store for help. He returned to assist his father, but was unable to remove his handcuffs. The police arrived and also attempted unsuccessfully to remove the father's cuffs. During this effort the father became pale and began to perspire. He was pronounced dead on arrival at the hospital.

Appellant's primary argument is that the trial court's instructions on felony murder were deficient in so far as they did not require the jury to find that death was a foreseeable result of appellants' behavior. Relying on People v. Stamp, 2 Cal.App.3d 203, 82 Cal.Rptr. 598 (1970), the court instructed the jury that they had to find that appellants committed "an unlawful act which proximately caused th[e] death," and that "[t]he proximate cause of death is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the death, and without which the result would not have occurred."

■ The D.C.Code felony murder statute requires that a homicide committed during a felony be done "purposely"

---

1. 18 U.S.C. § 5005 et seq.

2. On the armed robberies the sentences were ten to thirty years, and on the assaults they were three to ten years.

3. Assault with a deadly weapon is a lesser included offense of armed robbery. United States v. Johnson, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973).

unless the felony is "arson, . . . rape, mayhem, robbery, or kidnapping," in which case the homicide may be committed "without purpose so to do." 22 D.C.Code § 2401. We have previously[4] indicated that by eliminating the element of "purpose" with respect to these five serious felonies, Congress intended to apply the common law felony murder rule to them[5]—that is, that a homicide committed in the course of their perpetration is murder because the "malice" required for murder can be *implied* from the commission of the felony.[6] The doctrine of implied malice obviates the need for the government to prove that death was "foreseeable" when the homicide occurs during any of these five specified felonies.[7] Accordingly, nothing in the court's instruction warrants reversal of appellants' convictions.

■■ Appellants Branic and Stevens challenge the admission into evidence of their line-up identifications. We have viewed the pictures of the line-up, and find that the line-up was not suggestive. Relying on Spriggs v. Wilson, 136 U.S. App.D.C. 177, 419 F.2d 759 (1969), and United States v. Allen, 133 U.S.App.D.C. 84, 408 F.2d 1287 (1969), appellants also contend that the line-up identifications were inadmissible because the police refused their counsels' request for any descriptions which had previously been provided by witnesses viewing the line-up.[8] We are not in agreement as to whether the police were required to give such identifications. We do agree, however, that the refusal in this case was harmless since the line-up was not suggestive.

■ Baskerville attacks a tentative ruling by the trial court to the effect that *if* he testified, the prosecutor *might* be allowed to impeach him with a prior statement he gave to the police in which he denied participation in the instant offense, admitted committing another robbery, and claimed that Branic and Stevens told him that they had committed the instant offense.[9] The trial court diligently tried to keep out evidence of the "other" robbery because of its potentially prejudicial impact, but felt that if Baskerville testified the prior statement might be admissible because the two offenses were so highly related.[10] We need not decide—solely on the basis of speculation as to what appellant might have said—whether, or to what extent, the prior statement could be admitted since the court's tentative ruling did not influence appellant's decision not to testify. Counsel for Baskerville, at the urging of co-counsel and appellant himself, advised the court that "[i]n view of all the circumstances, it is the consensus . . . that Mr. Baskerville will not take the stand." So far as the record indicates these "circumstances"

4. *See, e. g.,* Carter v. United States, 96 U.S. App.D.C. 40, 223 F.2d 332, 333 n. 2 (1955); *cf.* Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199, 1229 (1968) (en banc).

5. *See generally* Coleman v. United States, 111 U.S.App.D.C. 210, 295 F.2d 555, 565–566 (1961) (en banc).

6. *See generally* United States v. Greene, 160 U.S.App.D.C. 21, 489 F.2d 1145, 1168–1169 (1973) (Statement of Bazelon, C. J., as to why he would grant rehearing en banc).

7. *Compare* American Law Institute, Model Penal Code § 201.2, and tentative draft # 9, comment 4 to § 201.2 (1962).

8. Appellants were viewed by witnesses to the instant robbery as well as witnesses to other robberies. *See* Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574 (1968).

9. Appellant also claims that the court erred in failing to "offer to sever Baskerville's trial from those of his co-defendants." On the contrary, the court explicitly indicated that it was "very seriously considering this question of severance." Its consideration terminated, of course, when Baskerville declined to testify.

10. The robberies, both of jewelry stores, occurred one day apart, and were committed with the same *modi operandi*, allegedly by the same three defendants. The keys to the handcuffs used in the *instant* robbery were found in Baskerville's car, which in turn, had been identified as the vehicle that sped away from the *other* robbery. Also found in Baskerville's car was Stevens' fingerprint.

**1070**

did not include the court's ruling that the prior statement might be admissible for impeachment.[11]

## II

 Appellant Stevens—who was twenty-one years old at the time of the jury verdict—was not considered for youth sentencing because he was twenty-two at the time he was sentenced. The Youth Act defines a "youth offender" as "a person under the age of twenty-two years at the time of conviction," and defines "conviction" as "the *judgment* on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere." 18 U.S.C. § 5006(e), (h) (emphasis supplied). However, for the reasons given by Judge Youngdahl in United States v. Carter, 225 F.Supp. 566 (D.C. D.C.1964), we reject a formalistic reading of the statute and hold that "for purposes of determining whether a defendant qualifies as a 'youth offender,' the time of 'conviction' is the time the verdict is returned or a plea of guilty is taken." *Id.* at 567. Thus, we remand Stevens' case for resentencing.

Branic and Baskerville claim that the trial court's reasons for denying youth treatment were insufficient. The Supreme Court has granted certiorari in Dorszynski v. United States, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973), to decide whether the sentencing judge need give reasons when he denies youth treatment.[12] Sound judicial administration requires that we withhold consideration of appellants' claims until the Supreme Court has acted.

So ordered.

---

11. The circumstances discussed by counsel were (1) that in explaining the presence of the handcuffs, Baskerville would "almost hav[e] to refer to [the other robbery] which I don't want," and (2) "[t]hen there is always the risk of [sic] in the course of examination, unwittingly Mr. Baskerville would mention something where he would open the door, although slightly, he would

open it ajar to permit the intrusion of the Government on an area that heretofore been [sic] held out of the province of cross-examination by the Court's ruling."

12. *See* United States v. Coefield, 155 U.S. App.D.C. 205, 476 F.2d 1152 (1973) (en banc); United States v. Reed, 155 U.S.App. D.C. 198, 476 F.2d 1145 (1973) (en banc).