**Leroy McFADDEN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11763.**

District of Columbia Court of Appeals.

Argued Sept. 20, 1978.

Decided Oct. 30, 1978.

---

Marsha E. Swiss, Washington, D. C., appointed by this court, for appellant.

Paul N. Murphy, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William J. Hardy, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEBEKER, YEAGLEY and FERREN, Associate Judges.

FERREN, Associate Judge:

On November 8, 1976, a jury convicted appellant of first-degree premeditated murder, D.C.Code 1973, § 22–2401, first-degree felony murder committed while perpetrating the crime of mayhem, D.C.Code 1973, § 22–2401, and mayhem, D.C.Code 1973, § 22–506. On December 8, 1976, the court sentenced appellant to life imprisonment for each of the first two counts and to three to ten years for mayhem. These sentences were to be served concurrently (but consecutively to another sentence appellant was then serving). Appellant asks this court to reverse his convictions on the ground that the trial court erred in admitting hearsay testimony of the victim identifying appellant as the man who had burned him. Alternatively, appellant contends that (a) in light of his conviction of felony murder, his first-degree premeditated murder conviction should be vacated since there was only one homicide, and (b) his conviction for mayhem should be reversed because mayhem is a lesser included offense of felony murder. Finding no error, we affirm.

I.

On the morning of November 8, 1974, two tenants of an apartment building had investigated smoke rising from the basement and found Mr. Taylor, a tenant of the basement apartment, in flames. The victim was admitted to the intensive care burn unit at the Washington Hospital Center suffering third-degree burns over 70 to 80 percent of his body (except his face). Police and fire investigators determined that a flammable liquid accelerant had been poured over Mr. Taylor, resulting when ignited in an "awesome," continuous "rundown" burn, causing heavy, even burning over the body.

Mr. Taylor's condition was critical and deteriorated steadily. An escharotomy (numerous incisions to permit expansion of his body) was performed, and he was placed on a respirator. He was never told that he was going to die, but expert testimony established at trial that patients with his degree of burns never survive and that a patient who sees his body burned so extensively develops "fantastic amounts of fear." The nurse attending Mr. Taylor testified that he was fearful and panicky whenever he lifted the blankets and saw his charred body.

A police department detective sought to interview Mr. Taylor on the morning after the fire, but the victim dozed off. One hour later, the nurse permitted an interview because, as she testified, everyone on the burn unit knew Mr. Taylor was going to die, and, at that moment, he was alert enough to answer questions. The nurse and the detective devised a means of communicating with Mr. Taylor, who would signal his answers. Mr. Taylor responded affirmatively to the detective's initial question whether the assailants had put something on him to burn him. The detective then presented photographs for Mr. Taylor to examine. When the detective displayed the second photograph and asked whether this was the man who had burned him, Mr. Taylor shook his head to indicate "yes." He panicked. He "bucked" the respirator and tried to breathe alone. Tears filled his eyes. It was a photograph of appellant, Leroy McFadden. The next two photographs yielded negative responses. The detective then again displayed appellant's photograph and told Mr. Taylor that the police were going to arrest appellant for burning him. He asked whether Mr. Taylor was sure of his identification. The victim responded affirmatively but became so agitated that the nurse terminated the interview. Mr. Taylor soon lost consciousness. He died two days later.

At trial, appellant presented an alibi defense, which the government rebutted.

## II.

■ Appellant contends that the trial court improperly admitted hearsay testimony that Mr. Taylor identified appellant as the man who had burned him. The trial court admitted the identification as both a spontaneous utterance and a dying declaration.

Appellant argues that Mr. Taylor's identification should not have been admitted as a dying declaration because the victim did not comprehend the imminence of his death. Appellant relies on the fact that Mr. Taylor

was not in severe pain (compared to a person with extensive second-degree burns) and that he never told anyone that he thought he was going to die. The record, however, supports the trial court's conclusion that Mr. Taylor knew death was imminent and despaired of recovery. *See Shepard v. United States*, 290 U.S. 96, 99, 54 S.Ct. 22, 23, 78 L.Ed. 196 (1933) ("To make out a dying declaration, the declarant must have spoken without hope of recovery and in the shadow of impending death"). The court can infer the victim's sense of impending death from the circumstances— from the nature and extent of his wounds. *See id.* at 100, 54 S.Ct. 22. Mr. Taylor had been severely burned all over his body, and incisions had been made to ease the tremendous swelling. He was told that his condition was very serious. He frequently lifted the blankets and saw his charred body. He became extremely fearful and panicky and asked for help. Tears filled his eyes when he viewed appellant's photograph. The evidence supports the trial court's conclusion that appellant spoke with a sense of his impending death. Accordingly, admission of Mr. Taylor's communication as a dying declaration identifying appellant was not error.[1]

## III.

■ Alternatively, appellant challenges the trial court's imposition of a sentence of life imprisonment for his conviction of first-degree premeditated murder, to run concurrently with his life sentence for conviction of felony murder. He argues that under D.C.Code 1973, § 22–2401, first-degree premeditated murder and felony murder are merely two different theories upon which the jury could convict for the same offense.

D.C.Code 1973, § 22–2401, provides:

Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense

---

1. Having concluded that Mr. Taylor's responses amounted to a dying declaration, we need not consider whether they were spontaneous utterances.

punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, as defined in section 22–401 or 22–402, rape, mayhem, robbery, or kidnapping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, is guilty of murder in the first degree.

No legal obstacle prevents the prosecutor from indicting and the jury from convicting appellant of both first-degree premeditated murder and felony murder. *Christian v. United States*, D.C.App., 394 A.2d 1, at 47 n. 119 (1978) (per curiam); *United States v. Mack*, 151 U.S.App.D.C. 162, 166 n. 4, 466 F.2d 333, 337 n. 4, *cert. denied*, 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972); *Fuller v. United States*, 132 U.S.App.D.C. 264, 288–90, 407 F.2d 1199, 1223–25 (1968) (en banc), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

> The offenses are distinct in the sense that they have different elements. One requires that the slaying be done with 'deliberate and premeditated malice,' the other requires that the killing occur in the course of certain enumerated felonies. [*Fuller v. United States, supra* at 289, 407 F.2d at 1224 (footnote omitted).]

The death of Mr. Taylor could have been the product of appellant's deliberate act and also could have occurred during the course of the mayhem.

The potential injustice of prosecuting what is essentially a single course of conduct (resulting in a single death) as more than one homicide is obviated by the prohibition against consecutive sentences.[2]

> [A] defendant committing a single homicide cannot be given consecutive sentences for both first degree murder and another crime of homicide. However, the fact that punishments may not be cumulative plainly does not mean that multiple convictions are impermissible. [*Id.*]

Accordingly, D.C.Code 1973, § 23–112 has been construed to prohibit consecutive sentences in this context, *United States v. Ammidown*, 162 U.S.App.D.C. 28, 37–38, 497 F.2d 615, 624–25 (1973), while concurrent sentences on convictions of first-degree premeditated murder and felony murder are not precluded. *Christian v. United States, supra; cf. Pynes v. United States*, D.C.App., 385 A.2d 772, 774 (1978) (kidnapping); *Blango v. United States*, D.C.App., 373 A.2d 885, 888–89 (1977) (burglary); *Fuller v. United States, supra* at 291–92, 407 F.2d at 1226–27 (rape).

### IV.

◼ Appellant also argues that the felony of mayhem is a lesser included offense of, or merges into, felony murder, because the act of burning is simply the means of killing. He asks this court to reverse his conviction for mayhem and vacate the concurrent sentence imposed. We cannot agree with appellant's argument.

Under the felony murder rule, the underlying felony does not "merge" into the murder. *Pynes v. United States, supra; Shanahan v. United States*, D.C.App., 354 A.2d 524 (1976). The statutory provisions dealing with murder and the particular felony (here mayhem) are intended to protect dif-

2. It may be illogical to conclude that one who murders another can receive two convictions, based on two different theories, for the very same act. However, appellant does not suggest a method for determining which of the two murder convictions should be retained (unless, by implication, it should be felony murder on the ground that only that theory would preclude merger of the mayhem conviction, and that the government should have the benefit of the maximum obtainable number of convictions). Nor does appellant suggest a mechanism for preserving or reinstituting the redundant or discarded conviction if, on appeal, the

favored conviction—or theory—were eliminated. Finally, appellant does not demonstrate concrete prejudice which cannot be cured by concurrent, rather than consecutive, sentences for the two first-degree murder convictions. In any event, appellant did not raise this issue for consideration by the trial court at sentencing. Under the circumstances, therefore, we do not find that the first-degree premeditated and felony murder convictions should be disturbed; there was no plain error. *See Watts v. United States*, D.C.App., 362 A.2d 706, 709 (1976) (en banc).

ferent societal interests. *See Pynes v. United States, supra* at 773; *Blango v. United States, supra* at 888. The mayhem statute seeks to protect the preservation of the human body in its normal functioning and the integrity of the victim's person from permanent injury or disfigurement. *United States v. Cook,* 149 U.S.App.D.C. 197, 462 F.2d 301 (1972). The felony murder statute purports to protect human life by permitting the jury (when death results) to infer malice from the fact that mayhem was committed. *See Whalen v. United States,* D.C.App., 379 A.2d 1152, 1159 (1977). While the preservation of a living person's normal bodily functions is very close in nature to the preservation of a human life, and while the cause of death may appear more direct in a case of mayhem than when death is incident to a rape, kidnapping, armed robbery, or even arson, the purpose of the felony murder rule would, to some extent, be frustrated if the underlying felony could not be prosecuted. In blunt terms, we have on the facts here convictions for torture (mayhem) and murder of the same person—two separate offenses. The felony of mayhem was complete when appellant ignited the body. The victim did not die until three days later.[3]

In this jurisdiction, defendants have been convicted and concurrently sentenced under D.C.Code 1973, § 22–2401 and § 23–112, for both felony murder and the underlying felony. *See Christian v. United States, supra* (armed robbery, burglary, assault with intent to kill); *Pynes v. United States, supra* (armed kidnapping); *Whalen v. United States, supra* (rape); *Harris v. United States,* D.C.App., 377 A.2d 34 (1977) (burglary); *Blango v. United States, supra* (burglary); *United States v. Branic,* 162 U.S. App.D.C. 10, 495 F.2d 1066 (1974) (armed robbery); *United States v. Barnes,* 150 U.S. App.D.C. 319, 464 F.2d 828 (arson), *cert. denied,* 410 U.S. 986, 93 S.Ct. 1514, 36

L.Ed.2d 183 (1973). We follow this precedent. Accordingly, we affirm appellant's convictions of first-degree premeditated murder, felony murder, and mayhem and uphold the three concurrent sentences imposed.

*So Ordered.*

---

3. We do not consider here the question whether a mayhem charge merges into a felony murder conviction when the mayhem could be characterized, on the facts, as merely incidental to the murder. *See Robinson v. United States,* D.C.App., 388 A.2d 1210 (1978) (held error, on particular facts, to submit a kidnapping charge to the jury in a rape case). "The facts of each case must be examined to determine whether in fact two separate crimes were committed, or whether they merged." *Id.* at 1211.