Samuel L. BYRD, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 84–1266.

District of Columbia Court of Appeals.

Argued June 5, 1985.

Decided Nov. 15, 1985.

Rehearing en banc granted
and opinion vacated
Feb. 3, 1986.

M. Shanara Gilbert, with whom James Klein and Mark Carlin, Public Defender Service, Washington, D.C. were on brief, for appellant.

Samuel L. Byrd, Jr., filed briefs, pro se.

Curtis E. Hall, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C. were on brief, for appellee.

Before NEWMAN and BELSON, Associate Judges, and PAIR, Senior Judge.

BELSON, Associate Judge:

Appellant contends that he may not be convicted of, and receive concurrent sentences for, both first-degree felony murder while armed and first-degree premeditated murder while armed for a single killing. We are convinced by appellant's reasoning, but are constrained by our holdings in *Doepel v. United States*, 434 A.2d 449 (D.C.),

cert. denied, 454 U.S. 1037 (1981), *McFadden v. United States*, 395 A.2d 14 (D.C. 1978), and *Christian v. United States*, 394 A.2d 1 (D.C.1978), cert. denied, 442 U.S. 944 (1979), to affirm both convictions and sentences. See *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) (only en banc court may overrule a prior decision). We take this opportunity, however, to explain why we are persuaded by appellant's argument.

## I

A grand jury indicted appellant, and two codefendants, on June 10, 1980, on, *inter alia*, one count of "First Degree Murder while Armed—Felony Murder"—during the course of an armed kidnapping, D.C. Code §§ 22–2401, –3202 (1973), one count of "First Degree Murder while Armed—Felony Murder" during the course of an armed robbery, *id.*, and "First Degree Murder while Armed," with deliberate and premeditated malice, *id.*, all arising from the killing of one person.[1]

At trial, the government introduced evidence that appellant and his two codefendants stole an automobile and drove it to a gas station. There, appellant and a codefendant left the car, and attempted to rob at gunpoint William Bell, an employee of the gas station. When Bell resisted, he was forced into the car with the three men. The three robbers drove off, with the gas station owner in pursuit. Bell was thereafter pushed out of the car. As Bell ran away, one of the codefendants, identified as appellant, shot and killed him. A jury found appellant and his codefendants guilty of all charges, except for one count of assault with a dangerous weapon. The trial judge sentenced appellant to concurrent terms of imprisonment of 20 years to life for premeditated murder, and 20 years

---

1. The indictment also charged the three defendants with kidnapping while armed, D.C. Code §§ 2101, –3202 (1973), armed robbery, *id.* §§ 22–2901, –3202, four counts of assault with a dangerous weapon, *id.* § 22–502, grand larceny, *id.* § 22–2201, unauthorized use of a vehicle, *id.* § 22–2204, and carrying a pistol without a license, § 22–3204. Pursuant to the government's pretrial motion, the court dismissed one count of assault with a dangerous weapon.

to life for each of the two counts of felony murder.[2]

On direct appeal, this court affirmed appellant's convictions by memorandum opinion and judgment. The Supreme Court denied appellant's petition for writ of certiorari. 463 U.S. 1213, 103 S.Ct. 3550, 77 L.Ed.2d 1397 (1983). Appellant thereafter filed in Superior Court a *pro se* motion to vacate, set aside, or correct his sentence pursuant to D.C. Code § 23–110 (1981).[3] Appellant argued that the indictment was defective because it charged him with three counts of first-degree murder (two counts of felony murder and one count of premeditated murder) arising from the death of only one individual and that "cumulative" punishments for the three offenses constituted multiple punishment in violation of the double jeopardy clause.

The trial court raised sua sponte the issue of whether one of appellant's felony murder convictions, and the felony convic-

tion underlying the other felony murder should be vacated under *Garris v. United States,* 465 A.2d 817 (D.C.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1013, 79 L.Ed.2d 243 (1984), and *Harling v. United States,* 460 A.2d 571 (D.C.1983). Defense counsel answered that question in the affirmative, and also contended that appellant could not be convicted of both felony murder and premeditated murder for one killing.

■ After considering briefs of the government and defense counsel, the court vacated appellant's felony murder conviction based on the felony of kidnapping and the armed robbery conviction underlying the other felony murder. The court concluded, however, that a single killing may result in concurrent sentences for both premeditated murder and felony murder, citing *Harling* and *Doepel v. United States,* 434 A.2d 449, 459 (D.C.1981).[4] Appellant challenges that conclusion.[5]

**2.** The trial judge imposed various concurrent and consecutive sentences, not pertinent here, on the remaining counts.

**3.** Appellant originally filed a request for an extension of time to file a motion pursuant to Super.Ct.Crim.R. 35. After the trial judge denied that motion, appellant filed a motion under D.C.Code § 23–110.

**4.** The trial court modified appellant's sentences in the following manner: first degree felony murder while armed (kidnapping) vacated; first degree felony murder while armed (armed robbery) retained concurrent to sentences for first degree premeditated murder while armed, armed kidnapping, two counts of assault with a dangerous weapon, grand larceny, and carrying a pistol without a license; armed robbery, vacated; grand larceny (of a motor vehicle) retained; unauthorized use of a vehicle, vacated; sentences for all of the other convictions remained unchanged. The court vacated appellant's sentence for unauthorized use of a vehicle pursuant to *Jones v. United States,* 479 A.2d 332 (D.C.1984), and *Parker v. United States,* 476 A.2d 173 (D.C.1984).

**5.** Collateral attack is a permissible means for raising a contention that concurrent sentences and the underlying double convictions are in violation of the double jeopardy clause because

they exceed the punishment permitted by statute. We stated in *Robinson v. United States,* 454 A.2d 810, 813 (D.C.1982), that:

> Although the general provisions of the statute authorizing collateral challenges to a sentence, D.C. Code 1981, § 23–110, could be construed to permit a motion for relief of any kind to be brought at any time, we conclude that Rule 35 imposes a rational complementing limitation on the court's jurisdiction to grant remedies for the different kinds of sentencing error. Where the sentence is "illegal" in the sense that the court goes beyond its authority by acting without jurisdiction or imposing a sentence in excess of the statutory maximum provided, then such sentence—because of the gravity of the error, the unqualified deprivation of one's liberty—may be challenged at any time.

*Accord Allen v. United States,* 495 A.2d 1145, 1149–50 (D.C.1985) (en banc) (Super.Ct.Crim.R. 35(a) available to challenge multiple punishment for single act); *Grimes v. United States,* 607 F.2d 6, 11 (2d Cir.1979) (collateral attack under 28 U.S.C. § 2255 appropriate for challenge to multiple convictions allegedly unconstitutional as multiple punishment in excess of statutory authorization). Since we look to the substance of appellant's *pro se* request for collateral relief rather than its form, we will consider appellant's entitlement to relief under Super.Ct. Crim.R. 35(a). *See* 3 C. WRIGHT, FEDERAL PRACTICE

## II

On several occasions, we have sustained the imposition of concurrent sentences for convictions of premeditated murder and felony murder arising from a single killing. Judge Leventhal's opinion for the en banc Court of Appeals for the District of Columbia Circuit in *Fuller v. United States*, 132 U.S.App.D.C. 264, 288–89, 407 F.2d 1199, 1223–24 (1968) (en banc), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969) set forth the rationale for that practice.

In *Fuller*, a grand jury indicted the appellant for first-degree felony murder, first-degree premeditated murder, and rape, arising from one occurrence. 132 U.S.App.D.C. at 286, 407 F.2d at 1221. The trial judge, in submitting the charges to the jury, reduced the first-degree premeditated murder count to second-degree murder. *Id.* A jury found appellant guilty of felony murder and rape, and of manslaughter as a lesser-included offense of second-degree murder. The court imposed concurrent sentences for the three convictions. *Id.* at 286, 407 F.2d at 1203.

The sole question before the en banc court was whether the trial court committed reversible error by failing to instruct the jury that it could not convict appellant of both felony murder and second-degree murder. *Id.* at 287, 407 F.2d at 1222. The court first noted that the grand jury properly *indicted* appellant for both first-degree premeditated murder and first-degree felony murder for one homicide. To reach that conclusion, Judge Leventhal applied the *Blockburger* "different elements" test:

The offenses are distinct in the sense that they have different elements. [cit-

ing *Blockburger v. United States*, 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932) ] One requires that the slaying be done with "deliberate and premeditated malice," the other requires that the killing occur in the course of certain enumerated felonies. The same slaying could be both: It could both occur during the course of a rape, and also be the product of the killer's deliberate and premeditated act.

132 U.S.App.D.C. at 289, 407 F.2d at 1224. Judge Leventhal, however, followed with the declaration that the court could not, as a matter of justice, impose *consecutive sentences* for both first-degree murder and another crime of homicide arising from a single killing:

Obviously there is a need to be careful to prevent injustice when what is essentially a single source of conduct may be prosecuted as more than one offense, under more than statutory provision. Such injustice is obviated by the rule prohibiting the imposition of consecutive sentences, in appropriate cases, even when the defendant has committed two or more legally distinct offenses. Of course, a defendant committing a single homicide cannot be given consecutive sentences for both first degree murder and another crime of homicide. However, the fact that punishments may not be cumulative does not mean that multiple convictions are impermissible.

*Id.* (footnotes omitted).[6]

*Fuller* then focused on whether it was improper for the court to submit to the jury charges of both felony murder and second-degree murder (as reduced from premedi-

---

AND PROCEDURE: CRIMINAL 2d § 583, at 392–93 (1982) (general principle to accord relief from illegal sentence under either rule or statute regardless of title of motion); *accord United States v. Santora*, 711 F.2d 41 (5th Cir.1983).

**6.** Although the discussion in *Fuller* suggested that only consecutive sentences for premeditated murder and felony murder would be improper, the court vacated appellant's concurrent sen-

tence for second-degree murder (as reduced from premeditated murder). The court stated that although the collateral effect of a concurrent sentence on parole or pardon was unlikely, "we see no particular reason why [the second-degree murder] concurrent sentence should be left standing." 132 U.S.App.D.C. at 298 n. 52, 407 F.2d at 1233 n. 52.

tated murder). It held that appellant's substantial rights were not plainly violated by that procedure. *Id.* at 297–98, 407 F.2d at 1232–33.

We relied on Judge Leventhal's application of the *Blockburger* test to premeditated murder and felony murder in sustaining concurrent sentences for those charges in *Christian v. United States,* 394 A.2d 1, 47 & n. 119 (D.C.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). There, each appellant was indicted and convicted of one count of first-degree premeditated murder and one count of first-degree felony murder for each of seven deaths. *Id.* at 7–8. The court sentenced each appellant to consecutive life sentences for each count of premeditated murder to run *concurrently* with consecutive life sentences for each count of felony murder. *Id.* at 8. We rejected appellants' contention that they could not be indicted for or convicted of both premeditated murder and felony murder arising from a single homicide. *Id.* at 47 n. 119. In support of that holding, we cited *Fuller* and the Circuit Court's adoption in *United States v. Mack,* 151 U.S.App.D.C. 162, 166 n. 4, 466 F.2d 333, 337 n. 4, *cert. denied,* 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972), of its dicta in *Fuller* concerning the propriety of concurrent sentences for premeditated murder and felony murder.

In *McFadden v. United States,* 395 A.2d 14, 17 (D.C.1978), we relied on *Christian, Mack,* and *Fuller* to reject the argument that premeditated murder and felony murder are but two different theories on which the jury might convict of first-degree murder. In *McFadden,* the trial court sentenced the appellant to concurrent terms of life imprisonment for first-degree premeditated murder and first-degree felony murder for one death. We observed that the

"potential injustice of prosecuting what is essentially a single course of conduct (resulting in a single death) as more than one homicide is obviated by the prohibition against consecutive sentences." *Id.* We also commented that while "[i]t may be illogical to conclude that one who murders another can receive two convictions, based on two different theories, for the very same act," appellant had failed to suggest a mechanism for determining which conviction should be retained, or for preserving or reinstituting the redundant or discarded conviction if, on appeal, the favored theory were eliminated. *Id.* at 17 n. 2. We also faulted appellant for failing to demonstrate concrete prejudice from the concurrent sentences. *Id.* Observing that appellant had not raised the issue in the trial court, we concluded that he had failed to demonstrate plain error. *Id.*

In *Doepel v. United States,* 434 A.2d at 459, we sua sponte raised the question whether appellant's convictions and concurrent sentences for first-degree premeditated murder, felony murder, and rape—all arising from the same occurrence—could survive the intervening decision in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (Congress did not authorize consecutive sentences for rape and a killing committed in the course of the rape). *Doepel* concluded that the rationale of *Whalen* applied to the *convictions* for felony murder and rape even though the appellant was sentenced concurrently. *Doepel,* 434 A.2d at 459. We reasoned that the potential collateral consequences of even concurrent sentences had been held to be an element of punishment, citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). *Doepel,* 434 A.2d at 459 & n. 12.[7] We stated, however, that "[w]e are not disturbed by

---

7. The Supreme Court held in *Benton v. Maryland,* that the fact that sentences for burglary and larceny were concurrent did not remove the elements necessary to create a justiciable controversy over the legality of the larceny convic-

tion. The Court noted the possible use of a conviction to enhance a sentence under habitual criminal statutes or to impeach character at a future trial. 395 U.S. at 790–91, 89 S.Ct. at 2060.

the separate convictions and sentences for first-degree premeditated murder and felony murder, as we are bound by *Blango v. United States*, D.C.App., 373 A.2d 885, 888 (D.C.1977)." *Doepel*, 434 A.2d at 459.[8] *Doepel* therefore held implicity that, although concurrent sentences constitute multiple punishment, such multiple punishment is permissible for the offenses of premeditated murder and felony murder arising out of a single act. This implies, in turn, that the two are separate offenses. Later, in *Harling v. United States*, 460 A.2d 571, 572 (D.C.1983), we cited *Doepel* when we observed that the appellant was not contesting "that a single killing may give rise to convictions for both premeditated murder and felony murder so long as concurrent sentences are imposed." *Id.* *Harling* was not a holding on that issue because it was not raised.

At the same time, however, that this court was adhering to the reasoning of *Christian, McFadden,* and *Doepel,* regarding first-degree murder cases, it began to recognize in other contexts that concurrent sentences do not obviate multiple punishment concerns. In *Ball v. United States,* 429 A.2d 1353, 1358 (D.C.1981), we noted that:

> concurrent as well as consecutive sentences constitute multiple punishment for purposes of double jeopardy and [we] are persuaded that a concurrent sentence for conviction of a separate offense, while not entailing a lengthier incarceration, nonetheless implicates possible collateral consequences which effectively result in "multiple" or "cumulative" punishment.

We also looked to *Benton* in *Waller v. United States,* 389 A.2d 801, 808 n. 8 (D.C.1978), *cert. denied,* 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253, *reh'g denied,* 447 U.S. 916, 100 S.Ct. 3003, 64 L.Ed.2d 865 (1980). There we observed that it was immaterial to a double jeopardy multiple punishment analysis that the trial court had imposed concurrent sentences. *Id.*

*Id.* (citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 and *Waller,* 389 A.2d at 808 n. 8); *accord Arnold v. United States,* 467 A.2d 136, 139 & n. 4. (D.C.1983); *Garris v. United States,* 465 A.2d 817, 823 (D.C.1983) (*Garris I*), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1013, 79 L.Ed.2d 243 (1984); *Tribble v. United States,* 447 A.2d 766, 775 (D.C.1982).

We have also recognized that collateral consequences attach to the improper *conviction* more than to the improper *sentence. Harling v. United States,* 460 A.2d 571, 574 (D.C.1983) (consecutive sentences for felony murder and underlying felonies improper; directing trial court to vacate either conviction). Recently, the Supreme Court adopted that analysis in *Ball v. United States,* —— U.S. ——, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985):

> One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma

8. Appellant asserts that that statement is dicta. We disagree. Although the court considered sentencing issues sua sponte, it nonetheless reviewed all the concurrent sentences for multiple punishment problems. Appellant further argues that *Blango* does not compel the result in *Doepel.* That appellant disagrees with the rationale of the court does not render its holding dicta.

accompanying any criminal conviction. See *Benton v. Maryland,* 395 U.S. 784, 790–791, 89 S.Ct. 2056, 2060–2061, 23 L.Ed.2d 707 (1969); *Sibron v. New York,* 392 U.S. 40, 54–56, 88 S.Ct. 1889, 1898–1899, 20 L.Ed.2d 917 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Id.* at 1673–74.

The clear emergence of the doctrine that two convictions for the same offense constitutes improper multiple punishment—regardless of whether concurrent or consecutive sentences are imposed—suggests the need for a re-evaluation of the holdings of *Doepel* and its predecessors that concurrent sentences are permissible for first-degree premeditated murder and felony murder, arising from a single killing. The doctrine enunciated in *Ball* presents us with two alternatives: 1) a single killing can support separate convictions of premeditated murder and felony murder—along with *either* concurrent or consecutive sentences—*or* 2) a single killing can give rise to only one conviction and one sentence. The choice between those alternatives will be determined by our answer to the question whether first-degree premeditated murder and first-degree felony murder for one killing are separate and distinct offenses. We turn to that question.

### III

Restrictions on a court's imposition of multiple punishment for the same offense have their foundation in intertwined statutory and constitutional principles. *See Whalen,* 445 U.S. at 688, 100 S.Ct. at 1435. The Double Jeopardy Clause of the Fifth Amendment "protects against a second prosecution for the same offense after ac-

quittal. It protects against a second prosecution for the offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). The guarantee against multiple punishments for one offense operates principally as a restraint on courts and prosecutors. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Id.* The " 'dispositive question' " is thus whether the legislature "intended to authorize separate punishments for the two crimes." *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981) (quoting *Whalen v. United States,* 445 U.S. at 689, 100 S.Ct. at 1436).

The fundamental rule of statutory construction to determine whether the legislature intended to permit the imposition of cumulative punishments is stated in *Blockburger:*

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. *Accord Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. at 2225. In *Whalen,* the Supreme Court held that D.C.Code § 23–112 embodied the *Blockburger* rule in setting forth whether consecutive sentences are permitted for separate statutory offenses in the D.C. Code.[9] 445 U.S. at 693, 100 S.Ct. at 1438.

---

**9.** D.C.Code § 23–112 (1981) provides:

A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides oth-

erwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises

The Supreme Court has applied the *Blockburger* rule in the context of concurrent as well as consecutive sentences. It has done so by focusing on the conviction rather than the sentence. In *Ball*, the Court stated:

> For purposes of applying the *Blockburger test* in this setting as a means of ascertaining congressional intent, "punishment" must be the equivalent of a criminal conviction and not simply the imposition of sentence. Congress could not have intended to allow two convictions for the same conduct, even if sentenced under only one; Congress does not create criminal offenses having no sentencing component.

105 S.Ct. at 1672.

The *Blockburger* test is not always controlling, however. *See Ball*, 429 A.2d at 1358. As a rule of statutory construction, it "is not a constitutional rule requiring courts to negate clearly expressed legislative intent." *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *accord Albernaz v. United States*, 450 U.S. at 340, 101 S.Ct. at 1142. Instead, the *Blockburger* rule is a useful canon of statutory construction. *Garrett v. United States*, — U.S. ——, 105 S.Ct. 2407, 2412, 85 L.Ed.2d 764 (1985); *see also Ball*, 429 A.2d at 1358 (court may determine legislative intent to permit concurrent sentences without restriction to single rule of statutory construction); *Simpson v. United States*, 435 U.S. 6, 11–12, 98 S.Ct. 909, 912–13, 55 L.Ed.2d 70 (1978) (Court will utilize several tools of statutory construction; *Blockburger* test not reached); *United States v. Coachman*, 234 U.S.App.D.C. 194, 200, 727 F.2d 1293, 1299 (1984) (court uses *Blockburger* test only when other techniques of statutory construction do not clarify intent); *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir.1980) (same). When a review of the language, structure, and legislative history reveals a clearly expressed Congressional intent, a contrary result under *Blockburger* will not control. *See Garrett v. United States*, 105 S.Ct. at 2412 (*Blockburger* test that indicates only one offense yields to traditional statutory construction that plainly demonstrates Congressional intent to create separate offenses).

Fundamentally, the government's position here is that premeditated murder and felony murder easily pass the *Blockburger* test, and that *Doepel* and its predecessors are, therefore, correctly decided. The government cites to *Fuller*, 132 U.S.App. D.C. at 289, 407 F.2d at 1224, which observed that the two "offenses" have different elements: the former requires that the killing be with "deliberate and premeditated malice," while felony murder requires that the homicide occur in the course of the commission of a felony.[10]

The seemingly attractive simplicity of that argument is shattered by a closer

---

out of the same transaction and requires proof of a fact which the other does not.

**10.** D.C.Code § 22–2401 (1981) provides:

Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, as defined in § 22–401 or 22–402, rape, mayhem, robbery, or kidnapping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, is guilty of murder in the first degree.

The statute, as originally passed in 1901, stated:

Whoever, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate any offense punishable by imprisonment in the penitentiary, kills another, is guilty of murder in the first degree.

31 Stat. 1321, ch. 854, § 798. Congress enacted the statute's current language in 1940 in order to eliminate the requirement of "purposely" with respect to killings in the course of certain enumerated felonies. *See* 86 Cong.Rec. H. 1358 (Feb. 12, 1940); *Goodall v. United States*, 86 U.S.App.D.C. 148, 180 F.2d 397, *cert. denied*, 339 U.S. 987, 70 S.Ct. 1009, 94 L.Ed. 1389 (1950).

reading of the *Blockburger* test. That test, by its terms, applies "where the same act or transaction constitutes a violation of *two distinct statutory provisions.*" 284 U.S. at 304, 52 S.Ct. at 182 (emphasis added). First-degree premeditated murder and first-degree felony murder are but separate clauses in one statutory provision—D.C. Code § 22–2401 (1981)—murder in the first degree. Thus, we do not even reach the application of *Blockburger* unless and until we determine that the two crimes are distinct statutory offenses. *Cf. Garrett*, 105 S.Ct. at 2412 (*Blockburger* test not controlling); *Simpson v. United States*, 435 U.S. at 11–12, 98 S.Ct. at 912–13 (*Blockburger* test not reached when other rules of statutory construction indicate intent).

In *United States v. Ammidown*, 162 U.S.App.D.C. 28, 497 F.2d 615 (1973) (supplemental opinion denying petition for rehearing), Judge Leventhal expounded the view that the structure of our first-degree murder statute and the common law understanding of the law of homicide indicated that premeditated murder and felony murder were not separate "offenses," the enactment of D.C.Code § 23–112 notwithstanding. 162 U.S.App.D.C. at 37–38, 497 F.2d at 624–25 (holding consecutive sentences improper). Judge Leventhal explained:

> [T]hat premeditated murder and felony murder are not separate "offenses" within the meaning of 23 D.C.Code § 112. First degree murder is defined in 22 D.C. Code § 2401, as purposeful killing, or killing in the course of commission or attempted commission of certain felonies. It is clear from the structure of section 2401 that *rather than describing distinct offenses in one statute, this provision merely offers alternate definitions and modes of proof of the same offense.* Our conclusion is fortified by the common law understanding of the law of homicide, from which the statute is taken. At common law, murder was defined

as killing accompanied by a given state of mind, most typically intention to cause death or intention to commit a felony. Where there was but one killing, there was but one offense, and one act could therefore give rise to only one sentence despite the availability of alternate methods of demonstration of the requisite state of the actor's mind. The enactment in 23 D.C.Code § 112 of a general canon of construction, which presumes that multiple sentences for offenses run consecutively unless stated to be concurrent, was not intended to alter the substantive law of murder.

*Id.* at 38, 497 F.2d at 625 (footnotes omitted) (emphasis added). Judge Leventhal, the author of *Fuller*—the opinion that served as the basis for the line of cases culminating in *Doepel*—conceded that *Fuller* had swept too broadly in its language. He explained in *Ammidown* that, "[t]he sentence in *Fuller* that premeditated murder and felony murder are separate 'offenses' merely might better have read 'charges,' since the only issue was whether there could be separate counts and verdicts." *Id.* n. 6.

*Ammidown* is not binding precedent in this jurisdiction because, unlike *Fuller*, it was decided after the effective date of court reorganization, February 1, 1971. *M.A.P.*, 285 A.2d at 312. We deem well-founded, however, Judge Leventhal's perception that § 22–2401 provides for but one offense of first-degree murder, provable by alternative means.

First, we too are persuaded that the structure of § 22–2401 is a clear indication of Congress' intent that proof of deliberate and premeditated malice and proof of killing in the course of the enumerated felonies are but alternate modes of proof. *Compare Albernaz v. United States*, 450 U.S. at 336, 101 S.Ct. at 1140 (*Blockburger* spoke in terms of separate offenses; conclusion of separateness also supported by structure of legislation—separate offenses,

with separate penalty provisions, in distinct subchapters).[11]

Second, we find support for that interpretation in the common law antecedents of § 22-2401. Congress enacted § 22-2401 in 1901 as part of an omnibus codification of civil and criminal laws for the District of Columbia. 31 Stat. 1321, ch. 854, § 798. The new District of Columbia Code did not abrogate the common law; rather, it provided that the common law as it existed in Maryland in 1801 continued in force unless repealed or modified by statute 31 Stat. 1189, ch. 854, § 1 (codified at D.C. Code § 49-301 (1981)); *see also O'Connor v. United States*, 399 A.2d 21, 25 (D.C.1979); *Hamilton v. United States*, 26 App.D.C. 382, 384-85 (1905). We have held that the definition of murder in the Code is not a new or purely statutory definition; it is the common law definition. *O'Connor*, 399 A.2d at 25; *Hamilton*, 26 App.D.C. at 385. The Code made a distinction, though, between degrees of murder. *Id.* at 388.

Generally, at common law, murder is an unlawful homicide committed with malice aforethought. R. PERKINS & R. BOYCE, CRIMINAL LAW 57 (3d ed. 1982). Malice aforethought may be express or implied, W. LaFAVE & A. SCOTT, JR., CRIMINAL LAW § 67, at 529-30 (1972). Malice aforethought is a term of art, R. PERKINS, *supra*, at 57, that denotes four types of murder, each accompanied by distinct mental states: 1) intent to kill; 2) intent to do serious bodily harm; 3) depraved heart; and 4) felony murder. LaFAVE & SCOTT, *supra*, § 67, at 528; *accord* 2 MODEL PENAL CODE AND COMMENTARIES § 210.2 comment at 13-15 (Official Draft and Revised Comments

1980) (malice aforethought is "arbitrary symbol" that signifies four mental states deemed sufficient to convict of murder).[12]

The common law of Maryland comports with these general principles. Maryland's constitution adopted the common law in 1776, subject to revision, amendment, or repeal by the legislature. *Gladden v. State*, 330 A.2d 176, 180 (Md.1974). The elements of murder in Maryland have remained unchanged from the common law. *Id.* In 1809, the Maryland legislature classified murder into first and second degrees; nonetheless, "no new statutory offense was created." *Id.* Thereafter, the Maryland legislature placed the various types of first-degree murder into separate statutory provisions, so that now MD.ANN.CODE art. 27 § 407 (1982) defines first-degree premeditated murder, while § 410 defines felony murder. (In addition, §§ 408 and 409 classify murder in the course of arson and other specified burnings as first-degree murder). Sections 407 and 410 do not, however, create any new crime. *McDowell v. State*, 31 Md.App. 652, 656-58, 358 A.2d 624, 627 (1976). The Court of Appeals of Maryland has explained: "Under common law principles, a killing in the perpetration of a robbery is murder. By proving every element of the underlying felony, the element of malice necessary for murder is established." *Newton v. State*, 280 Md. 260, 373 A.2d 262, 266-67 (1977) (citations omitted). Thus, under Maryland law, "first degree murder requires proof of wilfulness, deliberation and premeditation *or* proof of a killing during an enumerated felony. The underlying felony is one of two alternative elements of the crime." *Id.* 373 A.2d at 268 (emphasis in original).

---

**11.** That is not to say that a single statutory provision may never include more than one offense. For example, the language and the legislative history of a single statutory provision may indicate that two separate offenses were combined into one statutory provision for mere grammatical convenience. *Compare Ball*, 429 A.2d at 1359 (noting for other purposes that one statutory provision contained three separate offenses).

**12.** The doctrine of felony murder traces its origins to Coke, who in 1644 posited that if a man unlawfully shoots at the hen of another, and accidentally kills a man, he has committed murder; but if the shooting was directed at lawful game, the homicide is excusable. 2 WHARTON'S CRIMINAL LAW § 145, at 204 (C. Torcia 14th ed. 1979).

Our decisions also have consistently viewed evidence that a killing occurred in the commission of a felony as an alternative means of demonstrating common law malice. For example, we explained in *Shanahan v. United States*, 354 A.2d 524 (D.C.1976) that:

> Felony murder is a special crime of peculiar magnitude deemed to warrant proof by unique fashion. Malice, an essential element of murder, is implied from the intentional commission of the underlying felony even though the actual killing might be accidental.

*Id.* at 526 (citing *Goodall v. United States*, 86 U.S.App.D.C. 148, 150–51, 180 F.2d 397, 399–400, *cert. denied*, 339 U.S. 987, 70 S.Ct. 1009, 94 L.Ed. 1389 (1950), and *United States v. Branic*, 162 U.S.App.D.C. 10, 12–13, 495 F.2d 1066, 1068–69 (1974)); *accord Blango*, 373 A.2d 885, 888 (D.C.1977). Indeed, an indictment that charges common law murder has been held to be sufficient notice to the defendant that the government will proceed on a theory of felony murder. *Burton v. United States*, 80 U.S. App.D.C. 208, 209, 151 F.2d 17, 18 (1945), *cert. denied*, 326 U.S. 789, 66 S.Ct. 473, 90 L.Ed. 479 (1946) (instructions on felony murder upheld even though robbery was not charged in the indictment for common law murder; perpetration of a robbery takes the place of premeditation).

In summary, the common law background of the first-degree murder statute supports the view that the killing of one person is but one offense of first-degree murder, even though the defendant harbors dual states of mind—premeditation and the intent to commit a felony.

As we conclude that we are not presented with "two distinct statutory provisions," we need not apply the *Blockburger* test.

If we did so, the result arguably would be the same. The government contends that each type of first-degree murder requires proof of a fact not required to prove the other. Admittedly, the mental process of premeditation and deliberation differs from the commission of a felony: but the element to be proved is malice, an ultimate fact that the prosecution can establish by proving either of the foregoing. *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975) ("the Court's application of the [*Blockburger*] test focuses on the statutory elements of the offense"); *accord Coachman*, 234 U.S.App.D.C. at 202–03, 727 F.2d at 1301–02. Both at common law and by statute, proof of the commission of the felony, which entails proof of the intention to commit it, is an alternative means of proving the malice element of murder. In effect, proof of commission of the felony results in the imputation of the element of deliberate and premeditated malice. *Cf. Thorne v. United States*, 471 A.2d 247, 248 (D.C. 1983) (in burglary prosecution, proof that appellant harbored not only intent to assault but also intent to destroy property did not constitute proof of an additional fact for merger analysis; one of two convictions for burglary based on single act of entry ordered vacated).

Lastly, we may consider whether premeditated murder and felony murder "are directed to separate evils." *Albernaz*, 450 U.S. at 343, 101 S.Ct. at 1144; *United States v. Woodward*, —— U.S. ——, 105 S.Ct. 611, 613, 83 L.Ed.2d 518 (1985) (per curiam).[13] We have observed that the societal interest protected by the felony murder statute is the "security of the person and the value of human life." *Blango*, 373 A.2d at 888; *accord Whalen*, 379 A.2d at

---

**13.** We accord this factor less weight in our analysis than those discussed previously. The Supreme Court in *Albernaz* referred to separate evils only as a reinforcement of its conclusion that Congress intended to create separate offenses. 450 U.S. at 343, 101 S.Ct. at 1144. Certainly, an *exclusive* reliance on a societal interests analysis is improper. *See Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (reversing *Whalen v. United States*, 379 A.2d 1152, 1158–60 (D.C.1977), which utilized a societal interests analysis).

1159 (felony murder statute protects human life; dispenses with need for government to prove particular state of mind), *rev'd on other grounds,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Concededly, felony murder serves to deter the commission of certain inherently dangerous felonies, while premeditated murder reaches only deliberate killings. The ultimate societal interest—to prevent homicide—is, however, the same as the interest served by proscribing premeditated murder.

We therefore arrive at the view that first-degree premeditated murder and first-degree felony murder are the same offense, and that imposition of concurrent sentences does not obviate the problem created by multiple punishment that inheres in dual convictions. Were we not bound by the precedents we identified at the outset, we would order that on remand the sentencing judge should vacate one first-degree murder conviction and sentence.

### IV

Appellant also raised in his *pro se* § 23–110 motion the argument that the indictment was defective. He suggests that because he was indicted on three counts of murder—one count of first-degree premeditated murder, one count of first-degree felony murder (armed robbery), and one count of first-degree felony murder (kidnapping) —the jury may have unfairly inferred that he committed more than one killing.

Ordinarily we would not address this issue here because it is not a proper subject of collateral attack when standing alone. In this case, however, it is intertwined with the question of how first-degree murder charges would properly be the subject of indictment, trial, and appeal, if the division's analysis of the law were adopted by the en banc court.[14]

■ In this jurisdiction, the government is free to introduce either evidence of actual premeditation or evidence of the intent to commit a felony on an indictment charging first-degree murder. *Burton,* 80 U.S. App.D.C. at 209, 151 F.2d at 18. However, when the evidence supports both theories, we consider preferable an indictment that charges a defendant for one death by two counts of first-degree murder—one based on premeditation, the other based on felony murder. That way, the defendant is given more specific notice of the government's dual theories of guilt.

■ Furthermore, the indictment may separately charge a defendant for one death by more than one count of felony murder—with each count based upon distinct felonies. Then, if the government fails to adduce evidence on one of the felonies, or of premeditation, the court may strike the relevant charge without the difficulties of amending a conjunctive count.[15]

■ The indictment here charging appellant with three counts of the first-degree

---

14. Unlike appellant's other argument—that he may not be convicted and concurrently sentenced for both premeditated murder and felony murder—this contention concerns an alleged defect in the indictment and in the conduct of the trial. An attack pursuant to Rule 35(a) presupposes a valid conviction and is not a vehicle for challenges to alleged errors that occur prior to the imposition of sentence. *Allen v. United States,* 495 A.2d 1145, 1149 (D.C.1985) (en banc) (discussing post-conviction relief under Super.Ct.Crim.R. 35(a)). Furthermore, collateral attack pursuant to § 23–110 is inappropriate for a challenge to the indictment where, as here, there is no showing of cause and prejudice. *See Davis v. United States,* 411 U.S. 233, 242, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1973)

(waiver of Fed.R.Crim.P. 12(b)(2) applies in context of 28 U.S.C. § 2255 claim).

15. For example, in *Thorne,* 471 A.2d at 248 n. 1, we noted that the government had adopted the practice of seeking indictments with more than one count of burglary for a single entry when the evidence suggested that the defendant entered with the intent to commit more than one crime. The government initiated that practice to avoid a procedure condemned by this court in *Whalen,* 379 A.2d at 1155–57. In *Whalen,* we disapproved of the amendment of a single, unseverable charge of burglary. That charge was originally based on two distinct intents, stated in the conjunctive. We found it error for the court to permit the government to delete one of

murder of William Bell could not conceivably have misled the jury into believing that appellant committed three killings. Thus, even if this court should eventually rule that appellant may not be convicted and sentenced upon more than one count, the form of the indictment appears to be beyond challenge. *See Ball,* 105 S.Ct. at 1671 (government may prosecute under two counts even though conviction and sentence permissible for only one).

 Next, we perceive no problem with the court's submission of each count to the jury, and the entry of a conviction and sentence on each, pending appellate review. Judge Leventhal observed in *Fuller* that:

> [T]here are sound reasons for permitting the jury to render verdicts as to separate offenses even where consecutive sentences are not permitted. For example, in the murder situation, a prosecutor should be permitted to proceed on both first degree murder theories. Perhaps the jury will believe one and not the other, and perhaps the jury will believe both. We see no reason for a rule of law that would require the prosecutor to elect between the offenses before the case is sent to the jury. Nor do we see why the jury must elect. Permitting a guilty verdict on each count—if warranted by the facts—may serve the useful purpose of avoiding retrials by permitting an appellate court, or a trial court on further reflection, to uphold a conviction where there is error concerning one of the counts that does not infect the other. . . .
>
> There is no general reason why the jury should not be permitted to render a verdict on each theory, so long as the offenses are not in conflict and no aspect of the case gives reasonable indication that the jury might be confused or led astray.

132 U.S.App.D.C. at 289–90, 407 F.2d at 1224–25; *accord Garris v. United States,*

the intents without resubmission to the grand

491 A.2d 511, 514–15 (D.C.1985) (*Garris II*). Judge Leventhal discussed the possible restrictions on retrial because of double jeopardy if the jury were required to acquit on one count—for example, premeditated murder—if they found the defendant guilty of the other, felony murder. If an appellate court later reversed the felony murder conviction on the ground of insufficient evidence, the defendant might contend that double jeopardy would prevent a retrial for premeditated murder. *Fuller,* 132 U.S. App.D.C. at 290 n. 19, 407 F.2d at 1225 n. 19.

We note another justification for permitting jury verdicts on each count of premeditated murder and felony murder arising out of a single killing. The Supreme Court held in *Whalen,* 445 U.S. at 684, 100 S.Ct. at 1432, that consecutive sentences were improper for the underlying felony and for the felony murder. We have implemented that holding by requiring the court to vacate either the conviction for the underlying felony or for the felony murder. *Harling,* 460 A.2d at 574. The judge may impose, however, consecutive (or concurrent) sentences for premeditated murder and the felony underlying the vacated felony murder. *Id.; accord Garris II,* 491 A.2d at 514. Unless, however, the jury returns a verdict of first-degree murder specifically on the grounds of premeditation, the sentencing judge would not know if the jury found premeditation. Without such a specific verdict, the court could not permit both the first-degree murder and underlying felony convictions to stand. *Cf. State v. Frye,* 393 A.2d 1372 (Md.1978) (when prosecution advances theories of premeditated murder and felony murder, but only general verdict of first-degree murder, no basis to determine grounds for verdict so that underlying felony conviction must be vacated).

Thus, to preserve the record of guilt and to enable complete appellate review, the

jury.

trial court ordinarily should not vacate either first-degree murder conviction. "No legitimate interest of the defendant is served by requiring a trial court to guess which of multiple convictions will survive on appeal." *Garris II,* 491 A.2d at 515 (distinguishing circumstances present in *Ball v. United States,* 105 S.Ct. at 1674, where it was held that District Judge should enter judgment on only one offense, on ground that appeal in *Garris II* likely to raise asserted error independent of one count). Thus, as directed in *Garris II,* the trial court should ordinarily wait until the appeal process is completed before vacating judgment on multiple counts of first-degree murder. *Id.* Then, on remand from this court, the trial court should vacate such count or counts as necessary to avoid multiple punishment. If no appeal is taken, such action is appropriate once the period for appeal is past.[16]

Lastly, we would take the view that we should decline to mandate which of appellant's first-degree murder convictions must be vacated, but leave it to the trial court on remand to cure the multiple punishment problem, so that it may implement its original sentencing plan. *See, e.g., Garris II,* 491 A.2d at 514; *Thorne,* 471 A.2d at 249; *Harling,* 460 A.2d at 574.

■ As we said in the beginning, however, this division is not writing on a clean slate. This court has already held, in *Doe-*

*pel, McFadden,* and *Christian,* that convictions of first-degree premeditated murder and felony murder both may stand so long as the court imposes concurrent sentences. Accordingly, the order of the trial court is

*Affirmed.*

NEWMAN, *Associate Judge,* concurring:

I join the opinion of Judge Belson in all respects save one, and write separately only to highlight an additional area of concern which I have. I have serious doubt as to whether second-degree murder is a lesser included offense of felony murder. *See Towles v. United States,* 496 A.2d 560, slip op. at 7, n. 6 (D.C. July 25, 1985) (vacated by en banc order dated October 1, 1985 when the court decided to rehear en banc). I have the same "substantial doubt" expressed by Judge Ferren in his dissent on this issue in *Towles.*

---

**16.** If the unvacated murder conviction is subjected later to a successful collateral attack, the trial court should consider favorably a government motion to reinstate the vacated murder conviction. *Cf. United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (government may appeal trial court dismissal of indictment rendered after verdict of guilty; no double jeopardy violation because defendant not subject to second trial).