**Robert J. BONHART, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 94–CF–1683.**

District of Columbia Court of Appeals.

Argued Oct. 24, 1996.
Decided March 27, 1997.

---

Martha J. Mullen, Washington, DC, appointed by this court, for appellant.

L. Jackson Thomas II, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas C. Black, Stephanie Miller, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

A jury convicted appellant Robert J. Bonhart of felony destruction of property,[1] arson,[2] second-degree murder,[3] and felony murder.[4] The trial judge imposed concurrent sentences of three and one-third to ten years, three and one-third to ten years, fifteen years to life, and thirty years to life, respectively. Bonhart contends that the trial court erred by excluding evidence supporting

1. D.C.Code § 22–403 (1996).

2. D.C.Code § 22–401 (1996).

3. D.C.Code § 22–2403 (1996).

4. D.C.Code § 22–2401 (1996).

the defense that the arson was not the legal cause of the victim's death, and by admitting prejudicial evidence of appellant's drug dealing. We hold that the defense of legal cause failed as a matter of law and that the trial judge properly admitted evidence of uncharged drug dealing. As the government concedes, however, we must remand the case to the trial court for resentencing because of double jeopardy considerations.

Bonhart sold crack cocaine to Gerald "Della"[5] Goebeck, decedent, for a number of years. Della, his lover Wade, and their dog lived together on the second floor of a fourplex apartment building in the Northeast section of the District of Columbia. Bonhart visited this residence twice in one night to collect $30 Wade and Della owed him for crack he had supplied two days earlier. Wade testified that when the drug payment was not forthcoming the second time, Bonhart got violent and stated, "If I don't get my money, I'm going to burn this motherfucker down.... I'm tired of this faggot motherfucker holding my money." Bonhart knocked around some items in the apartment and slapped Della.

Shortly thereafter, while Wade was downstairs attempting to borrow money from his daughter and her boyfriend, two witnesses outside the apartment building observed someone they later identified as Bonhart carrying a gallon milk container that smelled of gasoline. Wade said he subsequently saw Bonhart near the door of Wade's and Della's upstairs apartment and that Bonhart was making a striking motion, as if to light a match. A severe fire ensued, and Wade, according to his testimony, was unsuccessful in two attempts to get Della out. The fire destroyed the apartment and killed Della and the dog.

## I.

Bonhart proffered evidence that Della initially escaped the burning apartment building but then voluntarily reentered to rescue his dog. Bonhart contends that this deliberate reentry into the burning building insulates him from criminal liability for felony murder because it "was an intervening act which broke the chain of causation." The trial court excluded the proffered evidence of Della's escape and reentry, concluding it was irrelevant. We agree that this evidence was irrelevant because Bonhart's legal cause defense failed as a matter of law.

■ The felony murder statute states, "Whoever ... without purpose so to do kills another in perpetrating ... any arson ... is guilty of murder in the first degree." D.C.Code § 22–2401 (1996). The government need not establish that the killing was intended or even foreseeable. *Prophet v. United States,* 602 A.2d 1087, 1095 (D.C. 1992); *Christian v. United States,* 394 A.2d 1, 48 (D.C.1978). We have construed the statute, however, to require a direct causal link between the felonious misconduct and the killing. *(Charles N.) Johnson v. United States,* 671 A.2d 428, 433–35 (D.C.1995). To prove actual cause, the government must present evidence establishing "something more than a mere coincidence of time and place between the wrongful act and the death." *United States v. Heinlein,* 160 U.S.App. D.C. 157, 168, 490 F.2d 725, 736 (1973) (quoting 1 WHARTON, CRIMINAL LAW AND PROCEDURE 544); *see (Charles N.) Johnson, supra,* 671 A.2d at 433 (quoting *Heinlein* ). It is undisputed here that the fire in question actually caused Della's death.

Even if the government proves that the commission of the felony actually caused the killing, a legal cause defense is available if an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of the result. *See* PERKINS & BOYCE, CRIMINAL LAW 781–82 (3d ed.1982). If this extraordinary event is the victim's own response to the circumstances that the defendant created, the victim's reaction must be an abnormal one in order to supersede the defendant's act.[6] Therefore, the question

---

**5.** Decedent was a male transvestite known as "Della."

**6.** One treatise has dealt with this issue as follows:

[L]egal cause will not be present where there intervenes ... an abnormal response.

1 LaFave & Scott, Substantive Criminal Law § 3.12(h), at 416–17 (1986).

here is whether Della's response was abnormal if he reentered his burning apartment building to save his dog's life.

■ This question admits of only one answer, because the impulse to protect one's personal property from a fire is generally recognized to be normal and ordinary rather than abnormal and extraordinary. Experience teaches us that even if one's dwelling is burning, it is quite common for a person to reenter it to try to rescue property. This normal human instinct to rescue can be especially pronounced when an animal's life is at stake.

We agree with the holding in *State v. Leopold*, 110 Conn. 55, 147 A. 118 (1929), which rejected a similar legal cause defense to felony murder. After a building was set on fire, two sons of a tenant there either remained inside voluntarily or were sent back in by their father to recover property. The *Leopold* court reasoned as follows:

> If the death of these boys resulted in a *natural sequence* from the setting of the building on fire, even though their conduct contributed to, or was the immediate cause of it, the accused would be responsible, and the effort of a person to save property of value which is liable to destruction by fire is such a *natural and ordinary* course of conduct that it cannot be said to break the sequence of cause and effect.

*Id.* 147 A. at 121 (emphasis added); *see also* PERKINS & BOYCE, *supra*, at 798. Citing *Leopold* with approval, the Supreme Court of Pennsylvania stated:

> An arsonist is bound to know the perils and natural results of a fire which are reasonably foreseeable according to the common experience of mankind, and in particular to know that an occupant of the building set on fire, an accomplice, a fireman and the public who are likely to come

to watch the fire, may die in or as a natural proximate result of the fire. The attempt of an officer or person to put out the fire, or to rescue people or property therein, or the attempt of any person to escape from the burning building does not constitute in legal contemplation a superseding cause which is sufficient to relieve the arsonist from murder in the first degree.

*Commonwealth v. Bolish*, 381 Pa. 500, 519, 113 A.2d 464, 474 (1955). We agree with the holdings in *Leopold* and *Bolish*, and conclude that even if Della voluntarily and deliberately reentered the building, this course of conduct is so natural and commonplace a reaction that it cannot constitute a legal cause of Della's death superseding Bonhart's felonious act of setting the fire. "Even the *deliberate* act of the one threatened or endangered ... in the effort to avoid ... damage to property, will not be a superseding cause if it is merely the *normal* response of a human being to the stimulus of the situation created by the wrongdoer." PERKINS & BOYCE, *supra*, at 797 (emphasis added); *see also* LAFAVE & SCOTT, *supra* note 6, § 312(h), at 416–17 & n. 122 (citing *Leopold* ).

Bonhart relies unavailingly on *Coleman v. United States*, 111 U.S.App. D.C. 210, 295 F.2d 555 (1961). In that case the court affirmed a felony murder conviction for shooting a police officer because the killing occurred during flight from an armed robbery and before any seizure or arrest. *Coleman* is inapposite here because it dealt with an issue of timing. The issue there was whether the killing occurred after the perpetration of the felony, whereas here we are called upon to examine the relevance of conduct alleged to have occurred during the burning of the arson fire.[7]

---

7. We note that "for purposes of the time connection implicit in the expression 'in the commission of,' the crime[ ] of arson ... may be considered to continue while the building burns...." 2 LAFAVE & SCOTT, *supra* note 6, § 7.5(e)(1), at 224–25; *see also State v. Leech*, 114 Wash.2d 700, 790 P.2d 160, 162 (1990). Bonhart's contention that Della's death occurred after the arson was already completed (provided he had an opportunity to escape and remain outside) is therefore

meritless. Bonhart is correct when he asserts that the crime of arson is *complete* (analytically) when there is the slightest burning. It does not follow, however, that the arson is therefore *completed* for the purpose of analysis of causation. To hold that it is completed would lead to the absurd result that arson ends as soon as the fire begins, and a person burned thereafter in the fire could not be found to have been harmed as a result of the arson.

**164**

In light of the foregoing, we agree with the trial judge that appellant's proffered evidence regarding Della's reentry into the burning building was irrelevant. The trial judge did not err in excluding the evidence.[8]

## II.

The trial judge admitted testimony that Bonhart sold drugs to Della for years, supplied crack cocaine to Wade and Della two days before the fire, and threatened to burn down the apartment if they did not pay the $30 they owed him for a recent drug sale. Bonhart contends that the trial judge should have excluded this testimony as improper "other crimes" evidence. We disagree.

 The impropriety of admitting prejudicial evidence of a defendant's other crimes merely to prove criminal disposition is well recognized. *Drew v. United States,* 118 U.S.App. D.C. 11, 331 F.2d 85 (1964). *Drew* is inapplicable, however, where "the evidence (1) is direct and substantial proof of the charged crime, (2) is closely intertwined with the evidence of the charged crime, or (3) is necessary to place the charged crime in an understandable context." *Johnson v. United States,* 683 A.2d 1087, 1098 (D.C.1996) (en banc). The trial judge correctly observed that the facts surrounding Bonhart's drug dealing were clearly intertwined with the arson, and put it in context. The evidence of Bonhart's drug dealing was also direct and substantial proof of the crimes charged, as Bonhart threatened to burn down the apartment if he did not receive payment for the drugs he had supplied. Consequently, the trial judge did not err by admitting this evidence.

## III.

In light of our conclusions concerning appellant's contentions regarding superseding legal cause and admission of evidence regarding drug dealing, we will affirm, subject to consideration of Bonhart's arguments regarding merger of offenses or double jeopardy.

 We begin by observing that the concurrent sentences for arson, felony murder, and second-degree murder cannot all survive. An underlying felony is a lesser offense included within the offense of felony murder. *Whalen v. United States,* 445 U.S. 684, 694 n. 8, 100 S.Ct. 1432, 1439 n. 8, 63 L.Ed.2d 715 (1980). Accordingly, concurrent sentences for the underlying felony and felony murder convictions violate the Double Jeopardy Clause of the Fifth Amendment. *See Doepel v. United States,* 434 A.2d 449, 459 (D.C.1981) (extending *Whalen's* prohibition against consecutive sentences to concurrent sentences). Furthermore, concurrent sentences for second-degree murder and felony murder constitute dual punishment for just one offense. *See Byrd v. United States,* 500 A.2d 1376, 1385 (D.C.1985) (as adopted by en banc court in *Byrd v. United States,* 510 A.2d 1035, 1037 (D.C.1986)). Where there is one death, only one murder conviction is possible. *Thacker v. United States,* 599 A.2d 52, 63 (D.C.1991). The trial court may therefore select either of two alternatives in its discretion. *Price v. United States,* 531 A.2d 984, 989 n. 7 (D.C.1987). The trial court may either: (1) allow the felony murder and felony destruction of property convictions to stand but vacate the convictions for arson and second-degree murder; or (2) allow the arson, second-degree murder, and felony destruction of property convictions to stand but vacate the felony murder conviction.

*Remanded for resentencing.*

---

8. Appellant's alternative argument, advanced for the first time on appeal, that appellant was entitled to have such evidence admitted in response to government evidence concerning Della's presence is not before us. *See Little v. United States,* 665 A.2d 977, 980 (D.C.1995). The rejection of irrelevant evidence offered on that basis would, in any event, not constitute reversible error under the circumstances of this case.