*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CO-0362

TONY A. MCCLAM, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2019-CF1-009634)

(Hon. Neal E. Kravitz, Trial Judge)
(Hon. Michael O'Keefe, Motions Judge)

(Argued November 19, 2024                    Decided January 10, 2025)

*Daniel Gonen*, Public Defender Service, with whom *Samia Fam* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the brief, for appellant.

*Timothy R. Cahill*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, *Michael Liebman*, and *Miles Janssen*, Assistant United States Attorneys, were on the brief, for appellee.

Before EASTERLY, MCLEESE, and SHANKER, *Associate Judges*.

MCLEESE, *Associate Judge*: Based on two shootings that happened within a matter of seconds, Mr. McClam was charged with offenses including one count of first-degree premeditated murder while armed and two counts of assault with intent

to kill while armed ("AWIKWA"). During trial, the United States elected to present the case to the jury on the theory that the fatal shots were fired during the first shooting and the shots giving rise to the AWIKWA charges were fired in the second shooting. In pertinent part, the jury found Mr. McClam not guilty of first-degree premeditated murder and was unable to reach a unanimous verdict on lesser-included homicide charges and AWIKWA. Before retrial, Mr. McClam moved to bar the United States from proceeding at retrial on the theories that (1) the shots giving rise to the AWIKWA charges were fired during the first shooting and (2) the fatal shots were fired during the second shooting. The trial court denied the motion. We reverse and remand for further proceedings.

## I. Factual and Procedural Background

### A. Trial Evidence

The parties have provided this court with only some of the transcripts of the trial. The following factual description therefore rests in part on descriptions of the evidence at trial from the briefs of the parties. It appears to be undisputed that the evidence at trial included the following. In July 2019, two groups of children in Southeast, Washington D.C. had multiple fights. One of the children involved was the son of Mr. McClam's girlfriend.

On the date at issue, a group including Mr. McClam encountered some of the children in the other group, but those children scattered. In a nearby parking lot, Mr. McClam and his group then encountered eleven-year-old K.B. Although K.B. had not been involved in the earlier incidents, the encounter grew hostile, and one or more members of Mr. McClam's group punched K.B. K.B. ran away.

Kamaal Porter-Greene testified that he was driving nearby and saw the incident in the parking lot. A friend of Mr. Porter-Greene was in the front passenger seat. Mr. Porter-Greene did not know K.B., but he was concerned for K.B.'s safety, so he pulled up beside K.B. K.B. asked for a ride home, and Mr. Porter-Greene agreed to give K.B. one. K.B. got into the back seat, and the car drove away.

Mr. Porter-Greene testified that the car then stopped while Mr. Porter-Greene and his friend discussed whether to buy cigarettes. Mr. McClam and his group walked toward the car, and Mr. Porter-Greene drove away from them. Mr. McClam then fired two shots at the back of the car. Mr. Porter-Greene realized that someone was shooting at the car, so he sped off and made several turns.

Mr. McClam ran through a gas station, ended up converging with Mr. Porter-Greene's car (which had effectively circled the block), and fired four more shots at the car. The 2 shootings were separated by approximately 23 seconds and 168 feet.

Two of the six bullets fired hit the rear of the car, and one of those bullets struck K.B. in the back and exited through his chest. K.B. died from that wound.

Mr. McClam did not dispute at trial that he fired six shots at the car and that one of those shots killed K.B. He contended, however, that he acted lawfully in self-defense and the defense of others. Specifically, Mr. McClam testified to the following. One of the children in his group did punch K.B., mistakenly believing that K.B. had been involved in earlier incidents involving the two groups of children. Mr. McClam did not see exactly where K.B. went after that.

Mr. McClam's group was walking home when Mr. Porter-Greene stopped his car in the middle of the road, blocking the group's path. Mr. Porter-Greene started yelling about someone having "put . . . hands" on his nephew. After Mr. McClam denied having done so, Mr. Porter-Greene started reaching down as though he was about to grab a gun. Mr. McClam reacted by drawing his own gun and firing at the car as the car drove away.

Mr. McClam thought Mr. Porter-Greene's car had left, and his group continued to head home by cutting through the gas station. Mr. Porter-Greene's car, however, had come back and started driving toward them. Fearing either that the car was going to drive into the group or that the front-seat passenger would shoot at

the group, Mr. McClam fired additional shots at the car. During the shootings, Mr. McClam was unaware that K.B. was in the car.

## B.  Procedural Background

As previously noted, a grand jury indicted Mr. McClam on charges including one count of first-degree premeditated murder while armed and two counts of AWIKWA. The sole contested issue in this appeal involves the murder count, so we will focus our discussion primarily on that count. The murder count alleged generally that Mr. McClam killed K.B. on or about the date of the shooting, and the indictment did not include more specific allegations as to the precise location of the shooting or which bullet caused K.B.'s death.

At the close of the evidence, Mr. McClam asked the trial court to instruct the jury that the jury could find Mr. McClam guilty of murder only if the jurors unanimously agreed that the fatal shot had been fired during the first shooting. In addressing that request, the trial court ruled that the two shootings were "two factually separate incidents," so that special unanimity instructions would be required for the murder count. Instead, however, the United States elected to proceed at trial solely on the theory that the fatal shot was fired in the first shooting. The jury therefore was instructed to that effect. The jury also was instructed on the

lesser-included offenses of second-degree murder while armed and voluntary manslaughter while armed.

An analogous issue arose with respect to the AWIKWA charges. Mr. McClam argued that the trial court should instruct the jury that the jury could find Mr. McClam guilty of AWIKWA only if the jurors unanimously agreed that the shots giving rise to the AWIKWA charges had been fired during the second shooting. In light of the trial court's determination that the two shootings were separate incidents, the United States agreed to proceed at trial solely on the theory that the shots giving rise to the AWIKWA charges were fired in the second shooting. The jury was so instructed.

The jury found Mr. McClam not guilty of first-degree murder and guilty of carrying a pistol without a license and was unable to reach a unanimous verdict on the lesser-included homicide charges and the AWIKWA charges.

Before retrial on the charges as to which the jury was unable to reach a verdict, Mr. McClam argued that the Double Jeopardy Clause precluded the United States from arguing to the jury that the fatal shot occurred during the second shooting. Mr. McClam also argued that the Double Jeopardy Clause precluded the United States from arguing to the jury that the shots giving rise to the AWIKWA charges

were fired during the first shooting. The motions judge disagreed. Mr. McClam then filed this interlocutory pretrial appeal.

## II. Analysis

At the outset, we note that the United States now concedes that the Double Jeopardy Clause precludes the United States from arguing to the jury in the retrial that the shots giving rise to the AWIKWA charges were fired during the first shooting. We accept that concession.

The United States contests Mr. McClam's claim with respect to the murder charge, both arguing that this court lacks jurisdiction to decide that claim on interlocutory review and disputing that claim on the merits. We hold that we have jurisdiction, and we reverse the trial court's ruling on the merits.

Before addressing the United States' jurisdictional argument, we briefly outline Mr. McClam's Double Jeopardy argument with respect to the murder count, which rests on the following chain of reasoning: (1) the first shooting and the second shooting were separate assaultive incidents for Double Jeopardy purposes, rather than a single assaultive incident, *see generally, e.g.*, *Gray v. United States*, 544 A.2d 1255, 1257 (D.C. 1988) (Assaultive "[i]ncidents have been found to be factually separate when separate criminal acts have occurred at different times and were

separated by intervening events; when they occurred at different places; when the defendant has reached a fork in the road and has decided to invade a different interest; or when the first act has come to an end and the next act is motivated by a fresh impulse.") (citations and emphasis omitted); (2) a single count of murder cannot permissibly rest on two shootings that occur during separate assaultive incidents; (3) the indictment in this case therefore was "duplicitous," s*ee generally, e.g.*, *Abrams v. United States*, 531 A.2d 964, 972 (D.C. 1987) ("An indictment is duplicitous if it charges in a single count two or more distinct offenses.") (internal quotation marks omitted); (4) the remedy for such duplicitousness would typically be either (a) a special instruction requiring the jury to be unanimous as to which shooting was the basis for the murder charge; or (b) an election by the United States to rely on only one of the shootings as the basis for the murder charge, *see generally, e.g.*, *Roberts v. United States*, 743 A.2d 212, 219 n.14 (D.C. 1999) (duplicitous charge can be remedied by election to pursue only one charge or by special unanimity instruction); (5) during the first trial, the United States chose the latter option, and the jury was accordingly instructed that the jury could find Mr. McClam guilty of murder only if the jurors unanimously found the murder was committed during the first shooting; and (6) the jury's discharge without deciding whether the murder was committed during the second shooting was an "implied acquittal," and the Double Jeopardy Clause therefore barred the United States from relying at any

retrial on the second shooting as the basis of the murder count, *see generally, e.g.,* *United States v. Allen*, 755 A.2d 402, 407 (D.C. 2000) (under Double Jeopardy Clause, discharge of jury without consent of accused and without verdict or mistrial is "equivalent to acquittal") (internal quotation marks omitted).

We understand the United States' opposing argument to focus on a single point in Mr. McClam's chain of reasoning: contrary to Mr. McClam's second point, the United States argues that a single count of murder may rest on two distinct assaultive incidents. Because the United States does not dispute the other steps in Mr. McClam's reasoning, we need not and do not express a view on those steps. Rather, we assume without deciding that the unchallenged steps in Mr. McClam's chain of reasoning are correct. Similarly, we express no view about several other topics that the parties discuss but that we do not deem necessary to our decision, including (1) the relationship between the Double Jeopardy Clause and the principles governing when a defendant has a right to special unanimity instruction; and (2) whether the judge or the jury should make factual findings with respect to whether two assaultive acts are part of a single assaultive course of conduct or instead are two separate assaultive incidents.

## A. Jurisdiction

In general, "[t]his court's jurisdiction is limited to appeals from 'final orders and judgments of the Superior Court.'" *Meyers v. United States*, 730 A.2d 155, 157 (D.C. 1999) (quoting D.C. Code § 11-721(a)(1)). It is well-settled, however, that a claim that a defendant has a right under the Double Jeopardy Clause not to be tried can be raised in an interlocutory appeal. *E.g.*, *Abney v. United States*, 431 U.S. 651, 659-62 (1977). Although this court does not appear to have squarely addressed the issue, the parties agree that an interlocutory appeal may be brought if a defendant seeks to bar retrial on a single count rather than to bar retrial on all charges. We agree with the parties on that point. *See, e.g.*, *United States v. Wright*, 776 F.3d 134, 141 (3d Cir. 2015) ("[T]he touchstone for interlocutory jurisdiction is [a Double Jeopardy] claim that, if successful, would require dismissal of, at a minimum, an entire count.").

Interlocutory appeal is not available, however, if a party is raising a Double Jeopardy claim that would merely limit the evidence or theories the prosecution could present at trial, rather than completely barring trial on a count. *See, e.g.*, *Jones v. United States*, 669 A.2d 724, 729 (D.C. 1995) ("[W]here a conviction of the charged offense is still possible even if the defendant succeeds on the [Double Jeopardy] collateral estoppel claim, collateral estoppel is not grounds for an

immediate appeal.").  In arguing that Mr. McClam's interlocutory appeal should be dismissed to the extent that the appeal challenges the trial court's ruling on the murder count, the United States contends that only one murder was charged and that Mr. McClam therefore is not seeking to completely bar trial on a count. Mr. McClam responds that the single murder count was duplicitous and that barring consideration at the retrial of a murder charge resting on the second shooting therefore would bar retrial on a distinct offense.

We note that the United States acknowledges that whether a defendant is seeking to preclude trial on a distinct offense is not merely a question of the way in which a charging document is framed.  Rather, the United States acknowledges that if two distinct offenses are duplicitously charged in a single count, a defendant who seeks to bar retrial on one of those distinct offenses has a right of interlocutory appeal.  We agree with the United States' acknowledgment on that point because defendants' ability to obtain interlocutory appeal to assert a right not to be tried on a count should not be defeated simply because two distinct offenses were charged in a single count in the charging document.

In light of the foregoing, the United States' jurisdictional argument (that Mr. McClam is only seeking to bar retrial on a theory in support of a unitary murder charge) collapses entirely into the United States' merits argument (that a homicide

count resting on two distinct factual incidents is not duplicitous). It follows that this court has jurisdiction to decide the United States' merits argument. *See, e.g.*, *Timus v. D.C. Dep't of Hum. Rts.*, 633 A.2d 751, 757 (D.C. 1993) (en banc) ("[M]erits rulings on issues inherent in a jurisdictional analysis are justified because courts, at the very least, always have jurisdiction to determine their jurisdiction.") (internal quotation marks omitted).

## B.  The Merits

The disputed issue in this case is one of law: whether a single count of murder resting on two factually distinct assaultive incidents is impermissibly duplicitous. We decide that legal issue de novo. *E.g.*, *Davis v. United States*, 759 A.2d 665, 676 (D.C. 2000) (court decides legal issues de novo).

Most broadly, the United States argues that all homicide charges involving a single victim are a single offense for Double Jeopardy purposes and thus it is not possible for a homicide charge involving a single victim to be duplicitous. *See generally, e.g.*, *Bonhart v. United States*, 691 A.2d 160, 164 (D.C. 1997) ("Where there is one death, only one murder conviction is possible."). Although that argument has some initial intuitive appeal, the argument is foreclosed by controlling precedent. Specifically, in *United States v. Bradford*, 344 A.2d 208 (D.C. 1975), a case that involved a single victim, this court held that "voluntary and involuntary

manslaughter are separate offenses which must, if charged in a single indictment, be charged in separate counts." *Id.* at 216.

At oral argument, the United States argued more narrowly that even if a single count charging different types of homicide can in some circumstance be duplicitous, a count alleging a single type of homicide (in this case, first-degree premeditated murder while armed) can never be duplicitous, even if the count rests on multiple factually distinct incidents. As far as we have been able to determine, that is an issue of first impression in this court. For several reasons, we hold that a murder count that rests on multiple sufficiently distinct factual incidents is impermissibly duplicitous.

First, the United States relies on the principle that a count is not duplicitous merely because the count alleges "the commission of any one offense in several ways." *United States v. Miller*, 471 U.S. 130, 136 (1985); *see Barker v. United States*, 373 A.2d 1215, 1219 n.5 (D.C. 1977) (holding that count was not duplicitous where "there was only one charge of assault made in the indictment, . . . although the government's evidence disclosed assault based on two separate theories"). That is correct as far as it goes, but the issue in this case is whether that principle extends to circumstances in which a single homicide count rests on two or more assaultive incidents that are sufficiently factually distinct that the incidents constitute separate

criminal assaults (which the United States concedes is true here). The cases cited by the United States do not address that question. We acknowledge, however, that the cases cited by Mr. McClam also do not in our view squarely answer that question.

Second, the United States generally agrees that a single count alleging two separate assaultive crimes is duplicitous for Double Jeopardy purposes, and the United States specifically concedes that the AWIKWA counts in this case were duplicitous. The United States has not provided a persuasive reason why a single homicide count should nevertheless be permitted to rest on two assaultive incidents that are so distinct as to constitute separate crimes.

Third, the United States' view would have some surprising and in our view undesirable consequences. To illustrate, consider a single count of first-degree premeditated murder while armed alleging that the defendant killed the victim by shooting the victim on one date and stabbing the victim several years later. Such a charge would of course be unlikely but might arise in unusual circumstances, such as where the victim's body was never found or where there was a question as to which injury caused the victim's death. In the United States' view, such a count would not be duplicitous. It follows that after a trial began on that charge, the United States could elect during trial to seek a verdict based solely on the shooting incident, abandoning the stabbing incident, but then could rely on the stabbing incident as the

basis of the murder count in a subsequent retrial if the jury was unable to reach a verdict based on the alleged shooting. Under the doctrine of implied acquittal, however, the United States' failure to obtain any verdict with respect to the stabbing incident would seem to bar retrial with respect to lesser-included assault offenses relating to the stabbing incident.

Our reasoning on this last point is as follows. (1) An indictment or information charging a greater offense also implicitly charges all lesser-included offenses of the charged offense. Super. Ct. Crim. R. 31(c)(1) (Defendants "may be found guilty of . . . an offense necessarily included in the offense charged."). (2) Assault with a dangerous weapon and simple assault are lesser-included offenses of first-degree premeditated murder while armed. *See, e.g.*, *Perez v. United States*, 968 A.2d 39, 102 (D.C. 2009) ("Second-degree murder is a lesser-included offense of first-degree premeditated murder . . . ."); *Little v. United States*, 709 A.2d 708, 715 (D.C. 1998) ("Assault with a dangerous weapon is a lesser-included offense of second-degree murder while armed."); *Sutton v. United States*, 434 F.2d 462, 471 n.17 (D.C. Cir. 1970) (simple assault is lesser-included offense of first-degree murder). (3) For purposes of the Double Jeopardy Clause, jeopardy attaches in a jury trial "when a jury is empaneled and sworn." *Serfass v. United States*, 420 U.S. 377, 388 (1975). (4) Under the Double Jeopardy Clause, defendants have a "valued

right to have [their] trial completed by the first tribunal to hear it." *Walker v. United States*, 317 A.3d 388, 400 (D.C. 2024) (internal quotation marks omitted). (5) Once jeopardy attaches on a charge, the discharge of the jury without a verdict or a mistrial and without the consent of the accused is treated for Double Jeopardy purposes as "equivalent to [an] acquittal." *United States v. Allen*, 755 A.2d 402, 407 (D.C. 2000) (internal quotation marks omitted). (6) Barring a mistrial on the lesser offense, acquittal on a greater charge precludes subsequent retrial for a lesser-included offense of the acquitted charge because greater offenses and lesser-included offenses are the "same offense" for purposes of the Double Jeopardy Clause. *See, e.g.*, *Evans v. United States*, 987 A.2d 1138, 1141 (D.C. 2010) ("[A] lesser-included offense is the same offense as the greater for double jeopardy purposes.") (internal quotation marks omitted); *United States v. Gooday*, 714 F.2d 80, 82 (9th Cir. 1983) (if lesser-included offense is not submitted to jury, "an acquittal on the crime explicitly charged necessarily implies an acquittal on all lesser offenses included within that charge").

Under the foregoing reasoning, the United States' post-jeopardy abandonment of the charge that the hypothetical murder was committed by stabbing, and the failure to present the jury with any other lesser-included offenses relating to the stabbing, would bar retrial on lesser-included offenses of first-degree premeditated

murder while armed, such as assault with a dangerous weapon and simple assault. It seems to us that it would be quite anomalous, and contrary to the purposes of the Double Jeopardy Clause, to permit the United States nevertheless to retry the defendant for first-degree premeditated murder based on the stabbing.

We recognize that the hypothetical murder count that we have been discussing involves a far greater temporal separation (i.e., years) between the incidents at issue than exists in the present case, which involves a temporal separation of just a few seconds. As previously noted, however, the United States has conceded that the two shootings in this case are separate assaultive crimes. Moreover, the United States has not attempted to argue that the degree of factual separation necessary to cause a murder charge resting on two separate incidents to be duplicitous is greater than the degree of separation necessary to render the two incidents separate criminal assaults. We therefore have no occasion to address that question. *Cf. generally Ellison v. United States*, 919 A.2d 612, 617-18 (D.C. 2007) (whether separate acts constitute single offense or multiple offenses may turn in part on interests legislature intended to protect in enacting offense). Rather, we rule more narrowly that a single homicide count that rests on multiple sufficiently factually distinct incidents can be duplicitous. Given the United States' concession that the murder count in the present case rests on two factually distinct assaultive crimes, and the United States' failure

to contest other aspects of Mr. McClam's argument, we hold that the Double Jeopardy Clause bars the United States from proceeding at the retrial in this case on the theory that the fatal shot was fired during the second shooting.

For the foregoing reasons, we reverse the order of the Superior Court and remand the case for further proceedings.

*So ordered.*