*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CO-0168


MALIK J. HEWITT, APPELLANT,

V.

UNITED STATES, APPELLEE.


Appeal from the Superior Court
of the District of Columbia
(2017-CF1-009418)

(Hon. Neal E. Kravitz, Trial Judge)

(Argued November 19, 2025                    Decided February 26, 2026)

*Adrian E. Madsen* for appellant.

*Edward R. Martin, Jr.*, United States Attorney at the time the brief was filed, with whom *Chrisellen R. Kolb*, *Nicholas P. Coleman*, *Michael C. Liebman*, *and David Saybolt*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and THOMPSON, *Senior Judge*.

EASTERLY, *Associate Judge*: When a defendant is convicted of first-degree (felony) murder and the underlying felony, one of these convictions must be vacated to avoid running afoul of the Double Jeopardy Clause.  In this case we are asked to

decide whether a trial court has discretion to choose which conviction to vacate or whether, as the trial court here understood it was obligated to do under our decision in *Mooney v. United States*, 938 A.2d 710 (D.C. 2007), a trial court must leave the felony murder conviction in place and vacate the predicate felony. We acknowledge there is tension between *Mooney* and earlier decisions from this court, specifically *Price v. United States*, 531 A.2d 984 (D.C. 1987), and *Bonhart v. United States*, 691 A.2d 160 (D.C. 1997). But we ultimately conclude that the trial court correctly determined that it had no choice but to sentence the defendant in this case, Malik Hewitt, for his first-degree (felony) murder conviction and vacate his underlying felony conviction.

## I.     Facts and Procedural History

As we detailed in our 2023 Memorandum Opinion and Judgment affirming Mr. Hewitt's convictions but remanding for resentencing, Mr. Hewitt, Nykemia Everett, and Larissa Williams made a plan in April 2017 to rob Christopher Heard because they believed he was a drug dealer who would have money on him. *Everett v. United States et al.*, Nos. 21-CF-723, 21-CF-724 & 21-CF-725, Mem. Op. & J. at 2 (D.C. July 24, 2023). Mr. Hewitt drove Mr. Everett and Ms. Williams in Ms. Williams's car to meet Mr. Heard on the pretense of buying drugs, and Mr. Hewitt remained in the car for the entirety of Mr. Everett's and Ms. Williams's interaction

with Mr. Heard.  After Mr. Hewitt took Mr. Everett and Ms. Williams to the housing complex where Ms. Williams and Mr. Heard had arranged to meet,

> Ms. Williams and Mr. Everett got out of the car and walked around the parking lot.  At some point, Ms. Williams took a phone call from Mr. Heard, who directed her to meet him between two SUVs on the left side of the parking lot.  Before Mr. Heard joined Ms. Williams there, Mr. Everett returned to  the car, where Mr. Hewitt was sitting in the driver's seat.  When Mr. Heard and Ms. Williams began to speak, Mr. Everett exited the car again, walked towards them, and pointed a gun in Mr. Heard's direction.  Mr. Heard paused, reached into his pockets, and lunged at Mr. Everett.  Mr. Everett then fired three shots at Mr. Heard.  Ms. Williams and Mr. Everett ran to the car and Mr. Hewitt drove them away.  By the time police arrived, Mr. Heard was on the ground and had no pulse.

*Id.* at 2-3.

Mr. Hewitt, Mr. Everett, and Ms. Williams were all arrested and charged in connection with Mr. Heard's death.  Ms. Williams agreed to cooperate with the government, pled guilty, and received a probationary sentence.  Mr. Everett and Mr. Hewitt went to trial.  The jury found Mr. Everett guilty of an array of charges including first-degree (felony) murder while armed, and the trial court imposed an aggregate sentence of thirty-three years.  The jury found Mr. Hewitt guilty of first-degree (felony) murder while armed, attempted robbery while armed, and conspiracy, *see* D.C. Code §§ 22-2101, 22-4502, 22-2802, 22-1805a, and the trial court imposed an aggregate sentence of thirty years of incarceration, with the lesser

sentences for conspiracy and attempted robbery while armed—twenty-four and sixty months, respectively—running concurrently with the mandatory minimum of thirty years for the first-degree (felony) murder conviction.

In his first appeal, Mr. Hewitt argued that sentencing him for both first-degree (felony) murder and the underlying offense of attempted armed robbery would impose double punishment for the same offense in violation of the Double Jeopardy Clause. Accordingly, he asked this court to merge these offenses by vacating his attempted robbery while armed conviction. The government agreed that this was the correct course of action. In our memorandum opinion and judgment, this court affirmed Mr. Hewitt's convictions but "remand[ed] for merger purposes," relying on *Matthews v. United States*, 13 A.3d 1181 (D.C. 2011), but with no further analysis or instruction to the resentencing court. *Everett*, Mem. Op. & J. at 11.

On remand, the question arose whether the trial court had discretion to vacate Mr. Hewitt's first-degree (felony) murder while armed conviction instead of his attempted robbery while armed conviction. The trial court observed that, if permitted, it would be inclined to exercise such discretion because it deemed Mr. Hewitt "far less culpable" than either Mr. Everett or Ms. Williams and believed the thirty-year mandatory minimum sentence for first-degree (felony) murder to be "disproportionately harsh" under the circumstances. The trial court considered

filings from the parties and reviewed this court's merger decisions—among them *Bonhart* and *Young v. United States*, 305 A.3d 402 (D.C. 2023), holding that, when a defendant is convicted of both first-degree (felony) murder and second-degree murder, a trial court has discretion to vacate the first-degree (felony) murder conviction and leave in place the second-degree murder and underlying felony convictions, and *Mooney*, holding that when a defendant is convicted of first-degree (felony) murder the trial court must maintain the felony murder conviction and vacate the lesser-included predicate felonies. The trial court observed that these decisions were "not obviously consistent" and did not provide a "simple or straightforward answer to the question" presented by Mr. Hewitt. Ultimately, the trial court concluded this court's decision in *Mooney* tied its hands and compelled it to retain Mr. Hewitt's first-degree (felony) murder while armed conviction and vacate his underlying attempted robbery while armed conviction. The court encouraged Mr. Hewitt to "consider appealing this ruling" to clarify this area of the law and ensure it had not erred in its analysis.

## II.    Judicial Estoppel and Waiver

Before we turn to the merger issue presented in this case, we address the government's argument that Mr. Hewitt either waived any argument that his first-degree (felony) murder while armed conviction should be vacated on remand or

should be judicially estopped from making this argument.

The government argues that Mr. Hewitt "waived" the merger question presented in this appeal because, when he argued his merger claim in his first appeal to this court, he did not argue that his first-degree (felony) murder while armed conviction should be vacated and that he should be sentenced solely for the predicate felony of attempted robbery while armed; to the contrary, he argued that his attempted robbery while armed conviction should merge into his first-degree (felony) murder while armed conviction. We are doubtful that his failure to pursue his current merger argument in a brief to this court constituted a "waiver"—i.e., a knowing, intelligent, and voluntarily relinquishment—of his current merger argument. *See Robin v. United States*, 344 A.3d 1276, 1281 n.1 (D.C. 2025) (distinguishing waiver from forfeiture); *Riley v. United States*, 338 A.3d 1, 7 (D.C. 2025) (distinguishing waiver from invited error). But in any event, the government's "waiver" argument fails because, when Mr. Hewitt pursued his current merger argument on remand in the trial court, the government did not argue that this argument had been "waived." We have held that the government can "waive a waiver" argument, *see, e.g.*, *Picon v. United States*, 343 A.3d 57, 67 n.5 (D.C. 2025), *petition for cert. filed* (U.S. Sept. 24, 2025) (No. 25-5713); *Sims v. United States*, 213 A.3d 1260, 1267 n.11 (D.C. 2019), and we conclude it has done so here.

Alternatively, the government contends that Mr. Hewitt should be judicially estopped from pursuing his current merger argument because he persuaded this court in his initial appeal to direct that his attempted robbery while armed conviction be merged into his first-degree (felony) murder while armed conviction. *See Mason v. United States*, 956 A.2d 63, 66-67 (D.C. 2008) (explaining that the doctrine of judicial estoppel applies when a litigant's "later position [is] clearly inconsistent with [his] earlier position" and he appears to have "succeeded in persuading a court to accept [his] earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001))). We question whether this argument is supported as a factual matter. First, although this court agreed merger of Mr. Hewitt's first-degree (felony) murder while armed and attempted robbery while armed convictions was required, at no point did we expressly state either that the latter conviction had to be vacated or that the trial court lacked discretion to consider vacatur of the former. Second, even though we cited to *Matthews*, a case in which we merged the predicate felony conviction into the first-degree (felony) murder conviction, we did so only for the proposition that "a person cannot be convicted of *both* felony murder *and* the underlying felony that supported the felony murder conviction." *Everett*, Mem. Op. & J. at 11 (emphasis in original); *see also Matthews*, 13 A.3d at 1191. But because the government also

did not preserve this argument in the trial court on remand, we conclude it is forfeited in this appeal as well.[1]

### III.   Merger

The animating force behind our merger case law is the Fifth Amendment's Double Jeopardy Clause.  Among other things, the Double Jeopardy Clause prohibits the imposition of multiple punishments for the "same offense" unless such cumulative punishments are authorized by the legislature.  *Whalen v. United States*, 445 U.S. 684, 688-89 (1980); *see also Grogan v. United States*, 271 A.3d 196, 207 (D.C. 2022) (explaining that legislative intent is paramount and the legislature can always choose to forbid multiple punishments for certain crimes).  This protection against multiple punishments extends beyond offenses that are literally the same to different offenses that share the same elements under the test set forth by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). *Whalen*, 445 U.S. at 691-93; *cf. (Samuel) Byrd v. United States*, 500 A.2d 1376, 1384 (D.C. 1985) (explaining that the *Blockburger* test is used only if the court has determined the two crimes are statutorily distinct), *adopted by* 510 A.2d 1035, 1037 (D.C. 1986) (en banc).  Generally, if each offense "requires proof of a fact which the

---

[1] The government's law of the case argument, which it raises only in a footnote, fails for the same reason.

other does not," the offenses are not the same and there is no double jeopardy bar on multiple punishments, *Whalen*, 445 U.S. at 692 (quoting *Blockburger*, 284 U.S. at 304), but if each offense requires proof of the same elements—or one requires proof of a subset of the same elements as the other—then the double jeopardy bar applies, *id*. at 693-94 (concluding that a defendant could not receive consecutive sentences for first-degree murder under a felony murder theory and the underlying felony of rape); *accord (Lindbergh) Byrd v. United States*, 598 A.2d 386, 389-91 (D.C. 1991) (en banc) (realigning this court's understanding of the double jeopardy bar on multiple punishments with that set forth in *Whalen* and *Blockburger*).

In the context of the offense of first-degree (felony) murder, *see* D.C. Code § 22-2101, our court recognized post-*Whalen* that "where there is one death, and the jury returns a verdict of guilty as to felony murder and the underlying felony as well, then the [trial] court may impose [a] sentence on only one of those charges, but not both," *Garris v. United States* (*Garris I*), 465 A.2d 817, 823 (D.C. 1983) (citing *Doepel v. United States*, 434 A.2d 449 (D.C. 1981)). In *Doepel v. United States*, we determined that even sentencing a defendant concurrently for first-degree (felony) murder and the underlying felony of rape was incompatible with *Whalen*, and—consistent with our conclusion in other contexts that the "appropriate appellate remedy" was to merge lesser-included offenses into greater ones, *see Franklin v. United States*, 392 A.2d 516, 519 n.3 (D.C. 1978)—we adopted the practice of

vacating the underlying felony and retaining only the first-degree (felony) murder conviction, *see Doepel*, 434 A.2d at 459 (in light of defendant's first-degree (felony) murder conviction, remanding for vacatur of his concurrent prison term for the underlying felony rape conviction); *see also, e.g.*, *Tribble v. United States*, 447 A.2d 766, 774 (D.C. 1982) (holding that, where defendant had been convicted of first-degree (felony) murder and armed robbery, the latter conviction "must be vacated in light of *Whalen*"); *Brown v. United States*, 464 A.2d 120, 125 n.7 (D.C. 1983) (acknowledging that the first-degree (felony) murder and underlying felony convictions merged and remanding with instructions to vacate defendant's "underlying felony (robbery)" conviction); *Williams v. United States*, 483 A.2d 292, 294 n.2 (D.C. 1984) (remanding with instructions to vacate defendant's armed burglary conviction because it merged with his first-degree (felony) murder conviction); *Prophet v. United States*, 602 A.2d 1087, 1089 (D.C. 1992) (remanding with instructions to vacate defendant's armed robbery conviction because that underlying conviction merged with his first-degree (felony) murder conviction).

This court's practice of merging the underlying felony as the lesser offense into the greater offense of first-degree (felony) murder was challenged in *Mooney*, a case in which a defendant's right to be present at his resentencing turned on whether the trial court, in order to honor the double jeopardy bar on cumulative punishment, had discretion to vacate either his first-degree (felony) murder conviction or the

predicate felony conviction of armed robbery. 938 A.2d at 712. We acknowledged that a trial court has discretion to "vacat[e] either one of two convictions" in certain situations, such as where a defendant is convicted of "first-degree premeditated murder and felony murder (of the same person)," because of the rule that "a person may stand convicted only once for a single murder." *Id*. at 723. But we held a trial court did not enjoy such discretion when "the illegality of multiple punishments results from convictions of a greater and lesser-included offense." *Id*. We explained that in this scenario "the double jeopardy bar is fully addressed and the illegal sentence corrected, by merging the lesser into the greater offense so that only the latter remains, *unless*—and this is an important caveat—there is clear legislative intent that punishment should be imposed for both." *Id*. (emphasis in original). Employing the *Blockburger* test, we reaffirmed that felony murder and the felony used to prove the offense of felony murder "are not separate offenses and felony murder is undoubtedly the greater offense." *Id*. In addition, stressing the importance of considering legislative intent, we observed that "[i]t cannot be suggested seriously that the legislature intended an attempted robbery conviction to suffice as an alternative sanction for murder." *Id*. at 723-24 (quoting *Jones v. Thomas*, 491 U.S. 376, 384-85 (1989)). With these considerations in mind,

> [w]e . . . ma[d]e explicit what ha[d] been implied in our remand orders over the years: absent legislative intent otherwise, when resentencing to respect the double

> jeopardy bar on multiple punishments for the same offense where the defendant has been convicted of a greater and lesser-included offense, the trial court has but one course, to vacate the lesser-included offense.

*Id*. at 724. Accordingly, we affirmed the trial court's retention of the conviction for felony murder, which "carrie[d] a mandatory minimum sentence of twenty years" and its vacatur of the underlying felony conviction of armed robbery. *Id*.

*Mooney* is directly on point and would seem to require us to reject Mr. Hewitt's argument that the trial court had discretion in his case to vacate his felony murder conviction and leave in place his attempted robbery while armed conviction. But as Mr. Hewitt highlights, our court has also issued decisions, like *Price*, 531 A.2d 984, *Bonhart*, 691 A.2d 160, and most recently *Young*, 305 A.3d 402, in which we have recognized that a trial court has discretion to vacate the greater offense of felony murder and leave the lesser underlying felonies in place. He argues that since *Price* and *Bonhart* predate *Mooney*, they are binding on this court per *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971); *see also Thomas v. United States*, 731 A.2d 415, 420 n.6 (D.C. 1999). We disagree. There is much about *Price* and *Bonhart* that we find puzzling, and we question how those cases would be decided if the slate were cleared. But ultimately we conclude that *Price* and *Bonhart* (and *Young*, which was decided post *Mooney* and merely cites to *Bonhart*) address a trial court's discretion only in the distinct scenario where a defendant—unlike in this case or in

*Mooney*—has been convicted of second-degree murder, as well as first-degree (felony) murder and an underlying felony in connection with the same complainant, and in that context alone held that a trial court could opt either (1) to retain the second-degree murder conviction and the conviction for the felony underlying the felony murder conviction and vacate the felony murder conviction, or (2) merge both the second-degree murder conviction and the underlying felony conviction into the felony-murder conviction. *See Loftus v. District of Columbia*, 51 A.3d 1285, 1287 n.5 (D.C. 2012) (explaining that the binding precedent rule applies "[w]here the facts underlying a prior panel's decision cannot be meaningfully distinguished from those present in this case" (internal quotations & citation omitted)). Thus we conclude that we are bound by *Mooney*.

In *Price*, this court addressed in a footnote the double jeopardy problem that arose from the defendant's two murder convictions for the same death—first-degree (felony) murder while armed and second-degree murder while armed—as well as his conviction for attempted robbery while armed. 531 A.2d at 989 n.7. We acknowledged that both second-degree murder and attempted robbery while armed are lesser-included offenses of first-degree (felony) murder. *Id.*; *see also Fuller v. United States*, 407 F.2d 1199, 1229 (D.C. Cir. 1967) (reasoning that second-degree murder is a lesser-included offense of first-degree (felony) murder even though it may not be chargeable on particular facts because the malice element for second-

degree murder is satisfied by a killing in the course of a felony). Nevertheless we held that the trial court had a choice as to which murder conviction to keep, which then had consequences for the underlying felony: the trial court could (1) keep the first-degree (felony) murder conviction and vacate both the underlying felony conviction and the second-degree murder conviction *or* (2) keep the second-degree murder conviction, vacate the first-degree (felony) murder conviction, and keep the underlying felony conviction. *Price*, 531 A.2d at 989 n.7. We said that this result was consistent with our opinions in *Thorne v. United States*, 471 A.2d 247 (D.C. 1983), and *Garris v. United States (Garris II)*, 491 A.2d 511 (D.C. 1985). *Id.* Similarly, in *Bonhart*, we reaffirmed that a trial court has discretion to vacate a first-degree (felony) murder conviction and keep the lesser-included second-degree murder and underlying felony convictions, 691 A.2d at 164, now citing *Price*, 531 A.2d at 989 n.7, *(Samuel) Byrd*, 500 A.2d at 1385, *adopted by* 510 A.2d at 1037 (en banc), and *Thacker v. United States*, 599 A.2d 52, 63 (D.C. 1991).

For multiple reasons, *Price* and *Bonhart* are curious decisions. First, in both cases, we diverged from our longstanding practice—in the felony murder context and beyond—of merging lesser-included offenses into the greater offense, *see supra* (discussing cases predating *Price* and *Bonhart*), without acknowledging this divergence. *Price*, 531 A.2d at 989 n.7; *Bonhart*, 691 A.2d at 164. Second, as support for our determination that the trial court had discretion not to merge the

lesser offense into the greater but to divide the greater offense (felony murder) into two lesser ones (second-degree murder and the underlying felony offense for felony murder), we relied on a set of cases in which we had not engaged in a similar division; rather, in those cases the defendants had actually been twice convicted of the *same* offense, which we understood was impermissible under the Double Jeopardy Clause and necessitated vacatur of one of the two duplicative convictions. In *Price*, we looked to *Thorne*—where the defendant had been convicted of two counts of burglary based on the government's theory that he had unlawfully entered the complainant's apartment with the intent to commit two different crimes, 471 A.2d at 248-49—and *Garris II*—where the defendant had been convicted of two counts of first-degree murder in relation to the same victim based on the government's theory that the murder was both premeditated and committed in the course of another felony, 491 A.2d at 513-14. *Price*, 531 A.2d at 989 n.7; *see also (Samuel) Byrd*, 500 A.2d at 1384 (explaining that "[f]irst-degree premeditated murder and first-degree felony murder are but separate clauses in one statutory provision—D.C. Code § 22-2401 (1981)—murder in the first degree"), *adopted by* 510 A.2d at 1037. Similarly, in *Bonhart*, we looked to *(Samuel) Byrd*, 500 A.2d 1376, and *Thacker*, 599 A.2d 52—both of which presented the same scenario as *Garris II*. 691 A.2d at 164. Third, we seemingly failed to appreciate that, in the *Garris II-Byrd-Thacker* scenario, the discretion given to trial courts to decide which

first-degree murder conviction to vacate did not and could not affect the sentence the trial courts imposed for that offense; either way, these trial courts were obligated by statute to sentence the defendant to life imprisonment. *See* D.C. Code § 22-2404 (1981) (providing that "the punishment of murder in the first degree shall be life imprisonment" with parole eligibility after twenty years); *see also Garris II*, 491 A.2d at 514 (citing the first-degree murder statute and explaining that "a trial judge has no discretion when passing sentence on a first-degree murder conviction"). Fourth and finally, in allowing trial courts to divide a greater first-degree (felony) murder conviction into lesser second-degree murder and underlying felony convictions, we appeared to disregard "Congress' intent that a mandatory minimum sentence be imposed for first-degree murder convictions," *Garris II*, 491 A.2d at 514; *see also Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (acknowledging that "the substantive power to prescribe crimes and determine punishments is vested with the legislature"); *Grogan*, 271 A.3d at 206 n.8 (recognizing that an "animating purpose of the Double Jeopardy inquiry is to protect the exclusive authority of the legislature to define and punish crimes").

So, the "merger" holdings in *Price* and *Bonhart* are subject to question on numerous grounds. But even if we accept that the discretion afforded to trial courts to choose which of two first-degree murder convictions to vacate under our *Garris II-Byrd-Thacker* line of precedent was properly extended in *Price* and *Bonhart* to

the distinct scenario where a defendant has been convicted of the greater offense of first-degree murder (with a mandatory minimum sentence) and the lesser offenses of second-degree murder (with no mandatory minimum) and an underlying felony, we are unpersuaded that *Price* and *Bonhart* compel the extension of similar discretion to the facts presented in *Mooney* and this case. *Price* and *Bonhart*, after all, acknowledged that at least one murder conviction had to stand, and neither suggested that the greater offense of first-degree (felony) murder could "merge" into the underlying felony conviction alone. Because we see no direct conflict between *Price* and *Bonhart* on the one hand and *Mooney* on the other, we consider ourselves bound by *Mooney* and our general practice of merging lesser-included offenses into greater ones.[2]

---

[2] We acknowledged in *Mooney* that the rule of priority rationale we provided in *Franklin*, 392 A.2d at 519 n.3, for our practice of merging lesser included offenses into greater ones—i.e., that "the jury should have been charged to consider the lesser included offense only if it had already determined that the appellant was not guilty of the main offense,"—does not map on to the "*sui generis*" crime of first-degree (felony) murder. 938 A.2d at 724 n.17. To illustrate using Mr. Hewitt's case, the court was not obligated to tell the jury to consider the felony murder charge first and only if it decided that he was not guilty of that offense to consider if he was guilty of attempted robbery while armed. To the contrary, the jury was instructed on attempted robbery while armed before it was instructed on first-degree (felony) murder because it needed to find that Mr. Hewitt was criminally responsible for the attempted robbery *before* it could convict him of first-degree (felony) murder. Even so, we conclude that the need to honor the legislature's intent that a defendant serve a mandatory minimum sentence for first-degree (felony) murder supplies an alternate rationale for this established merger practice in the felony murder context.

Limiting our understanding of *Price* and *Bonhart* to their particular facts, as *Mooney* effectively did, 938 A.2d at 723 & n.16, is also consistent with the Supreme Court's decision in *Jones v. Thomas*, 491 U.S. 376 (1989), which *Mooney* cited. In *Jones*, the Supreme Court rejected the argument that a defendant who had been given consecutive sentences of fifteen years imprisonment for attempted robbery and life imprisonment for first-degree (felony) murder and had served his fifteen-year sentence should be released from prison because his life sentence for felony murder was unconstitutional. *Id.* at 385-87. Instead, the Court held that, consistent with the Double Jeopardy Clause's bar against multiple punishments for the same crime, the fifteen-year sentence could be credited against the life sentence and to do otherwise would be contrary to legislative intent. *Id.* at 384-85. *Jones* supports our conclusion that a trial court, at least when confronted with a single first-degree (felony) murder conviction and an underlying felony, has no discretion to vacate the greater offense and retain the lesser.

We agree with the trial court that the result is both harsh and incongruous. It is harsh because the trial court must sentence Mr. Hewitt to the current mandatory minimum sentence for first-degree (felony) murder—thirty years, *see* D.C. Code § 22-2101—meaning his punishment for driving his codefendants to and then away from an attempted robbery in which he did not otherwise participate will be almost as long as that of Mr. Everett for firing the fatal shots. And it is incongruous because

it creates the possibility that a trial court will have discretion to more leniently sentence the person directly responsible for a death, but no such discretion with respect to someone like Mr. Hewitt. For example, had Mr. Everett been convicted of first-degree (felony) murder and second-degree murder, the trial court could have sentenced him concurrently for second-degree murder (with no mandatory minimum) and the underlying attempted robbery (with a maximum sentence of three years imprisonment).[3] But these harsh and incongruous results are a product primarily of the first-degree murder statute itself—which does not limit its application to individuals directly responsible for deaths that occur in the course of the commission of felonies[4]—and secondarily of our decisions in *Price* and *Bonhart* addressing a distinct sentencing scenario. The former concern is a subject for the legislature; the latter concern can only be addressed by the en banc court.

---

[3] This opportunity did not arise because the jury was instructed to consider second-degree murder (and, subsequently, involuntary manslaughter) only if it did not find Mr. Everett guilty of first-degree (felony) murder and it convicted him of the greater offense.

[4] *Compare* D.C. Code § 22-2101, *with* N.Y. Penal Law § 125.27(1)(a)(vii) (McKinney) (limiting the application of first-degree (felony) murder to individuals directly responsible for death(s) in the course of a felony, unless they directed the murder), *and* Or. Rev. Stat. Ann. §§ 163.107(1)(j), 163.115(b) (limiting first-degree murder charges to those who personally and intentionally committed the homicide during the commission of the specified felonies).

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*